COMMONWEALTH *vs.* THOMAS J. PLUNKETT, JR.

Bristol. February 7, 1996. - May 13, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Homicide. Practice, Criminal,* Verdict, New trial, Examination of jurors, Capital case. *Intent. Malice. Felony-Murder Rule. Robbery. Evidence,* Intent, Death certificate. *Jury and Jurors.*

At a murder trial the judge should have allowed the defendant's motion for a required finding of not guilty on so much of the indictment as alleged deliberate premeditation. [637-638]

At a murder trial the judge correctly denied the defendant's motion for a required finding of not guilty on so much of the indictment as alleged murder in the first degree where the evidence was sufficient to permit the jury to find the defendant guilty on the theory of felony-murder. [638]

In the circumstances of a first degree murder case that was submitted to the jury on the theories of deliberate premeditation and felony-murder, where the jury were not asked to specify the theory on which they returned their verdict of guilty, where the evidence was insufficient to warrant a guilty verdict on the theory of deliberate premeditation, and where it was not conclusive that the jury necessarily and unavoidably found the defendant guilty of felony-murder, a new trial was required. [638-639]

This court declined to abandon its established rule that there must be evidence to support each alternative theory submitted to the jury to uphold a general verdict of guilty. [639-640]

At the retrial of a murder case, the death certificate, if offered in evidence, should have the word "homicide" redacted or carefully explained, and it would be advisable that the medical examiner not state an opinion that the death was a homicide. [640]

At the retrial of a murder indictment the judge should consider whether individual voir dire of the venire would be necessary concerning bias with respect to evidence that the victim was a homosexual or bisexual. [640-641]

INDICTMENTS found and returned in the Superior Court Department on October 19, 1990.

The cases were tried before *Patrick F. Brady, J.*

*Kevin S. Nixon* for the defendant.

*Kevin Connelly,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. We reverse the defendant's conviction of murder in the first degree because only one of the two theories of guilt (deliberate premeditation and felony-murder) on which the case was submitted to the jury was supported by the evidence and, in the circumstances, we cannot fairly conclude that the jury reached their verdict on the theory for which there was evidentiary support.

It is well established in this Commonwealth that a verdict cannot stand unless it appears that the jury reached their verdict on a theory for which there was factual support. See *Commonwealth* v. *Flynn,* 420 Mass. 810, 818 (1995) (case submitted to jury on two theories of guilt of manslaughter, only one of which was supported by evidence; general verdict of guilty returned; new trial ordered on theory supported by evidence); *Commonwealth* v. *Green,* 420 Mass. 771, 781 (1995) ("The possibility that the verdicts were based on theories for which the Commonwealth failed to offer sufficient evidence for a rational jury to find guilt beyond a reasonable doubt necessitates our setting them aside"); *Commonwealth* v. *Fickett,* 403 Mass. 194, 197 (1988) (new trial ordered because evidence was insufficient on one of the theories of murder in first degree submitted to jury and general verdict returned); *Commonwealth* v. *Kickery,* 31 Mass. App. Ct. 720, 724-725 (1991) (new trial ordered where evidence supported only one of two theories of aggravated rape submitted to jury; general verdict returned); *Commonwealth* v. *Eldridge,* 28 Mass. App. Ct. 936, 937-938 (1990) (same, as to crime of compelling unnatural sexual intercourse by force or threat). Cf. *Commonwealth* v. *Matchett,* 386 Mass. 492, 511 (1982) (where evidence warranted guilty verdict for murder in the second degree on two theories but jury instructions were wrong on one theory, new trial ordered); *Federal Deposit Ins. Corp.* v. *Holbrook & Johnston,* 36 Mass. App. Ct. 424, 431 n.12 (1994) ("Our decisions in criminal cases . . . seem to look toward invalidating a verdict where an alternative is unsupported in fact").

In addition to the conviction of murder in the first degree, the jury convicted the defendant of unarmed robbery. The felony of unarmed robbery would support a conviction of murder in the first degree on the theory of felony-murder, but only if the death occurred in the course of the enterprise and the defendant committed the felony with conscious disregard for the risk to human life. *Commonwealth* v. *Moran,* 387

Mass. 644, 651 (1982). See *Commonwealth* v. *Ortiz,* 408 Mass. 463, 466 (1990). The evidence warranted a finding that the defendant committed an unarmed robbery with a conscious disregard for the risk to the victim's life and that the victim died during the course of the robbery.

Because the jury were not asked to identify the theory or theories on which they arrived at their verdict of guilty of murder in the first degree, we do not know whether the jury reached their verdict on the theory of felony-murder or on the theory of deliberate premeditated murder. Because, as we shall explain, the evidence was insufficient to warrant a guilty verdict on the theory of deliberate premeditation, there must be a new trial. This is not a case in which a new trial fairly can be avoided because a simultaneous guilty verdict on a felony indictment demonstrates necessarily and unavoidably that the jury reached its verdict of guilty of murder in the first degree on the theory of felony-murder. See *Commonwealth* v. *Blackwell,* ante 294, 300 (1996); *Commonwealth* v. *Berry,* 420 Mass. 95, 112 (1995).

We set forth the evidence that the jury could have believed, including all evidence most favorable to the Commonwealth, on the issue of the defendant's deliberate premeditation. In the morning of September 11, 1990, the body of Louis Souza was found in his apartment in Fall River. He had been bound and gagged, with his hands tied behind his back and a towel tied around his face. A diamond ring that he usually wore was missing, and there were scratches on his ring finger indicating forcible removal of the ring. A T-shirt had been partially stuffed into his mouth and tied around his head. The shirt had been inserted so as to force his tongue in an "up" position. The medical examiner concluded that Souza died of suffocation resulting from the blockage of the upper air passages when, within one hour of the gag's being inserted, the victim's saliva decreased the flow of air through the gag. The victim had sustained other injuries that inferentially were caused by the defendant.

The police found the defendant's fingerprints on items in the victim's apartment. When the police first questioned the defendant, he admitted that he knew the victim but said that he had not seen him for two months and did not know where he lived. When pressed to explain why his fingerprints were found in the victim's apartment, the defendant conceded that he had been in the apartment but denied killing the victim.

The defendant gave a statement to the police in which he admitted that he had gone to the victim's apartment. He said that he took the victim's wallet and three rings when the victim was not looking. The victim made sexual advances toward him which the defendant resisted. He offered to tie the victim up if it would make him feel better. He tied the victim's hands behind his back. He put a towel over the victim's face and tied it behind his head. The defendant then left, with the victim calling for him to come back. The defendant repeated this account on videotape. In that statement, the defendant said, "When I left he was standing there; he was talking; he was trying to convince me to stay" and "so I figured that, you know, something happened afterwards." He admitted that he had sold the victim's rings to a jeweler. He admitted that he had thrown the victim's wallet where the police had earlier found it.

1. The evidence did not warrant submitting the case to the jury on the theory of deliberately premeditated murder in the first degree. It is an indispensable element of deliberately premeditated murder that the defendant intended to kill the victim. *Commonwealth* v. *Chipman*, 418 Mass. 262, 269 (1994). *Commonwealth* v. *Blaikie*, 375 Mass. 601, 605 (1978). *Commonwealth* v. *Tucker*, 189 Mass. 457, 494-495 (1905). It is only that aspect of malice that involves an intent to kill that can support a guilty verdict on the theory of deliberately premeditated murder. See *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995). Additionally, as the cited opinions indicate, the Commonwealth must prove that the defendant's resolution to kill followed a period of reflection.

The Commonwealth rightly does not argue that the evidence warranted a finding that the defendant intended to kill the victim or that the defendant reflected on whether to kill the victim before he did so. There is no doubt that there was evidence that would have warranted a finding that the defendant intended to bind and gag the victim and that the defendant reflected on what he was about to do before he did it. Although the evidence warranted a finding of malice on bases other than an intention to kill, it did not warrant an inference that the defendant intended to kill. The defendant did not bind and gag the victim to the degree that the victim was instantly suffocated. Death came because, when the gag became saturated with saliva, the passage of air was ob-

structed. There is no basis for inferring that the defendant intended this consequence of his conduct. The judge should have allowed the defendant's motion for a required finding of not guilty on so much of the murder indictment that charged deliberate premeditated murder.[1]

2. Although the verdict of guilty of murder in the first degree could not be substantiated on the theory of deliberate premeditated murder, the evidence was sufficient to permit the jury to find the defendant guilty of murder in the first degree on the theory of felony-murder. The jury returned a verdict of guilty of unarmed robbery, a felony that, as we have said, could support the murder verdict that the jury returned. The jury could reasonably have found that the victim died in the course of the unarmed robbery. The jury were instructed that such a felony (one not inherently dangerous to human life) could warrant a felony-murder first degree verdict only if they found that the defendant acted with a conscious disregard for the risk to human life. The evidence permitted a finding consistent with that instruction. See *Commonwealth* v. *Scott*, 408 Mass. 811, 822-823 (1990) (foreseeable that gag would cause death by asphyxia). Consequently, the judge was correct in denying the defendant's motion for a required finding of not guilty on so much of the murder indictment that charged murder in the first degree.

3. The verdict of guilty of murder in the first degree cannot stand. As we noted earlier, the general rule in the Commonwealth is that there must be a new trial if, as here, a jury, given two theories of guilt, returned a general verdict, and the evidence supported a guilty verdict on only one of those theories. This court has identified an exception to this general principle where it is apparent that the jury reached its general verdict necessarily and unavoidably on the theory for which there was evidentiary support. See *Commonwealth* v. *Blackwell, ante* 294, 300 (1996); *Commonwealth* v. *Berry*, 420 Mass. 95, 112 (1995). The *Blackwell* and *Berry* cases involved felonies that were inherently dangerous to human life. In the circumstances of those crimes, it was unavoidable that, if the jury found, as they did in each case, that the felony was committed and that the defendant killed the victim, the killing oc-

---

[1]If in doubt on this point, the judge should have guarded against reversible error by calling for separate verdicts on the two theories of murder in the first degree.

curred during the course of the felony, and the jury necessarily found the defendant guilty of felony-murder.

The circumstances of this case, however, do not permit the conclusion that the jury necessarily and unavoidably found the defendant guilty of felony-murder. In finding the defendant guilty of unarmed robbery, the jury did not necessarily also find that the victim's death occurred in the course of the felony. Moreover, although the jury would have been warranted in finding that the manner in which the unarmed robbery occurred showed a conscious disregard for the risk to human life, that conclusion was not compelled. As the prosecutor correctly agreed, in a discussion of how to answer a question from the jury, the jury could find the defendant guilty of unarmed robbery and properly return a verdict of guilty of involuntary manslaughter. The defendant's conduct was not necessarily taken in conscious disregard for the risk to human life. It may have been only reckless, in which event a verdict of guilty of murder in the second degree based on the third prong of malice or a verdict of guilty of involuntary manslaughter were possibilities, but not a verdict of murder in the first degree based on felony-murder.

4. We reject the Commonwealth's argument that we should abandon our established rule that there must be evidence to support each alternative theory submitted to the jury to uphold a general verdict of guilty. The United States Supreme Court has taken a view contrary to ours, concluding that, if the evidence warranted a guilty verdict on one theory of guilt given to the jury but not another, the verdict may stand. See *Griffin* v. *United States*, 502 U.S. 46, 54-56 (1991).[2] We do not accept the Supreme Court's premise that, in such a situation, the jurors will have obviously rejected the theory for which there was no evidentiary support. If the judge tells a jury that they may find the defendant guilty on a theory that is factually unsupported (in effect committing an error of

[2]The Supreme Court of Washington as a matter of State law has rejected the rule of the *Griffin* case. *State* v. *Ortega-Martinez*, 124 Wash. 2d 702, 708 (1994). A majority of jurisdictions that have passed on the question since the *Griffin* case was decided have applied the *Griffin* rule. See, e.g., *People* v. *Guiton*, 4 Cal. 4th 1116, 1126 (1993); *Atwater* v. *State*, 626 So. 2d 1325, 1327-1328 n.1 (Fla. 1993), cert. denied, 114 S. Ct. 1578 (1994); *State* v. *Enyeart*, 123 Idaho 452, 455-456 (1993); *State* v. *Grissom*, 251 Kan. 851, 892 (1992); *State* v. *Olguin*, 906 P.2d 731, 732 (N.M. 1995); *Barefoot* v. *Sundale Nursing Home*, 193 W.Va. 475, 493 (1995).

law), the jurors understandably might believe that there must be evidence to support that theory. The law of homicide is not uncomplicated in this Commonwealth. If judges at all levels have difficulty with it from time to time, it is obvious that lay jurors can easily be confused. The premise of the Supreme Court's position, that obviously the jury did the right thing, is not so well founded as to attract our acceptance of it. See *People* v. *Guiton*, 4 Cal. 4th 1116, 1132-1133 (1993) (Mosk, J., concurring) ("the premise of jury 'infallibility' is unsupported"). If the premise of the Supreme Court's position were correct, a jury would never return a guilty verdict when the evidence was insufficient to warrant that verdict, and we know that is not so. If a person is to be incarcerated, especially incarcerated for life without the possibility of parole, in fairness there must be evidentiary support for each theory of guilt on which the judge tells the jury they may find the defendant guilty.

This problem should not be a continuing one because we have indicated today that, in cases involving more than one theory on which the defendant may be found guilty of a crime, separate verdicts on each theory should be obtained. See *Commonwealth* v. *Accetta, post* 642, 646-647 (1996).

5. We discuss briefly issues that may be raised at the retrial. (a) The death certificate, if offered in evidence, this time should have the word "homicide" redacted or carefully explained. See *Commonwealth* v. *Bastarache*, 382 Mass. 86, 107 (1980); *Commonwealth* v. *Lannon*, 364 Mass. 480, 482 (1974). Similarly, it would be advisable that the medical examiner not state an opinion that the death was a homicide. (b) Because the evidence did not warrant a finding of malice based on an intent to kill, on retrial the case may not be submitted to the jury on that aspect of malice. (c) Assuming no significant changes in the circumstances, the trial judge need not, but may, conduct an individual voir dire concerning the possible effect on each juror of evidence that the victim was a homosexual or bisexual. In this case, general questions of the type the judge put to the venire collectively were sufficient in seeking to identify bias.[3] The traditional view in such matters has been to leave the ques-

---

[3]After telling the venire that the evidence might indicate that the victim was a homosexual or bisexual, the judge inquired: "[I]s there anything about that circumstance which would interfere with anyone's ability to be

tion of an individual voir dire of jurors to the discretion of the trial judge. See *Commonwealth* v. *Boyer*, 400 Mass. 52, 56 (1987) (no individual voir dire held); *Commonwealth* v. *Appleby*, 389 Mass. 359, 373, cert. denied, 464 U.S. 945 (1983) (limited individual voir dire held); *Commonwealth* v. *McGregor*, 39 Mass. App. Ct. 919, 920 (1995) (no individual voir dire held). We have, however, identified subjects that inherently require an individual voir dire on request. See *Commonwealth* v. *Seguin*, 421 Mass. 243, 248-249 (1995), cert. denied, 116 S. Ct. 1286 (1996), and cases cited.

The subject of juror attitudes toward homosexuality may be important in a case such as this. Eight people out of approximately eighty members of two venires from which the jurors were selected came forward in response to the judge's general questions. These responses suggested possible bias in each direction or ambivalence, but the majority reaction was to express a bias against homosexuals.[4] The judge excused each of the eight jurors. The subject requires careful attention, but we are not prepared to mandate an individual voir dire in the circumstances of this case.

6. The conviction of unarmed robbery, as to which the defendant has made no argument on appeal, is affirmed. The verdict of murder in the first degree is vacated, and the murder indictment is remanded for a new trial at which the defendant may be tried for murder in the first degree only on the theory of felony-murder.

*So ordered.*

---

fair and impartial?" and "[I]s there anything about that circumstance that would bias or prejudice anyone against either the prosecution or the defense?"

[4]Compare "I have two homosexual sons and I would be biased" with "In my reasoning, the gentleman who was supposedly murdered did something that caused the murder"; "I probably wouldn't be fair at all because I just don't like [homosexuals]"; "I have a bias against homosexuals," and "I can't stand them." As to ambivalence, one potential juror said "I find it very hard to understand unnatural acts and I don't know if it would prejudice me one way or the other."