Commonwealth *v.* Scott.

COMMONWEALTH *vs.* JOHN A. SCOTT.

Bristol. October 6, 1998. - November 10, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Felony-Murder Rule. Practice, Criminal,* Instructions to jury, Assistance of counsel, Sentence, Duplicative punishment, Capital case. *Robbery. Homicide. Jury and Jurors. Constitutional Law,* Assistance of counsel.

Where the evidence at the trial of an indictment of murder in the first degree on a theory of felony-murder, with unarmed robbery as the underlying felony, demonstrated that the defendant, in robbing the victim, acted with a conscious disregard for human life, the judge's erroneous instruction permitting the jury to determine that the underlying crime was "inherently dangerous" was not prejudicial. [364-366]

No substantial likelihood of a miscarriage of justice was created by the judge's proper exercise of discretion to ask the jury to clarify a question they had submitted, following which request the jury, without clarifying their question, returned a verdict of murder in the first degree. [366-367]

A criminal defendant did not demonstrate that his trial counsel's performance and tactical decisions created an error or errors which were likely to have influenced the jury's conclusions. [367-369]

A conviction of unarmed robbery underlying a conviction of murder in the first degree on a theory of felony-murder was vacated as duplicative. [369]

INDICTMENTS found and returned in the Superior Court Department on March 24, 1993.

The cases were tried before *James F. McHugh, III,* J., and a motion for a new trial was heard by him.

*Charles K. Stephenson* for the defendant.

*David B. Mark,* Special Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, John A. Scott, appeals from convictions of murder in the first degree on the theory of felony-murder and unarmed robbery. He also appeals from the denial of his motion for a new trial. The defendant's principal contentions are that the judge erroneously instructed the jury on felony-murder, and that defense counsel provided ineffective assistance.

We affirm the defendant's conviction of murder in the first degree. We also affirm the order denying the defendant's motion for a new trial. We vacate the conviction of unarmed robbery as it is duplicative of the conviction of murder in the first degree. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 275-276 (1998). We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

The jury could have found the following facts. In the early morning hours of December 17, 1992, the victim, Steven Consoli, approached the defendant and attempted to purchase cocaine. The defendant sold the victim a bag which purportedly contained cocaine but actually contained baking soda. The victim paid for the "cocaine" with a counterfeit twenty-dollar bill, yelled, "Gotcha," and drove away in his pickup truck. Angered, the defendant pursued, first on foot and then in an automobile, with his girl friend and two male friends. The defendant intercepted the victim's truck at the next block. The defendant approached the truck and struck the victim in the face. A struggle ensued. The victim left the truck and attempted to flee. The defendant followed him and hit him several times. During the struggle, two of the defendant's friends — Curtis Roderick and Lawrence Gelmette — joined in the attack.[1] As the defendant continued to strike the victim, Roderick kicked the victim and Gelmette stabbed the victim. A third friend, Wayne Costa, approached the scene, and saw the defendant and Gelmette struggling with the victim. He heard the defendant say, "Where's my . . . money?" When Costa inquired as to what was happening, the attack ended. The defendant, Roderick, and Gelmette left the scene. The victim staggered toward his truck.

A police officer arrived at the scene of the attack and found the victim in an unresponsive state, bleeding, and lying on the ground. The victim was rushed to a hospital where he died of stab wounds. The defendant was arrested later that day. The victim's wallet was recovered from the trash can in the defendant's girl friend's kitchen.

The defendant subsequently was indicted for armed robbery and murder in the first degree. The jury convicted the defendant of murder in the first degree based on a theory of felony-murder

---

[1]The Commonwealth presented evidence that Roderick and Gelmette were involved in the attack from the beginning, and that the three men pulled the victim from his truck.

and unarmed robbery. In the Superior Court, the defendant unsuccessfully moved to reduce his conviction of murder in the first degree.

Thereafter, this appeal was entered and then stayed by a single justice of this court. In the interim, the defendant moved for a new trial and for funds to hire an investigator. The motion was remanded to the Superior Court. After several evidentiary hearings, the judge denied the motion for a new trial. The defendant appealed. We consolidated the appeal of the defendant's conviction of murder in the first degree and the appeal from the denial of the motion for a new trial.

1. *Felony-murder jury instruction.* The defendant contends that the judge's instructions on felony-murder were incorrect.[2] After correctly stating the elements of felony-murder, the judge instructed: "[Y]ou must also determine whether or not the Commonwealth has proven beyond a reasonable doubt that the actual or attempted crime was inherently dangerous to human life or was carried out by [the defendant] in a manner that exhibited a conscious disregard for human life."[3] The judge's instructions do not accord with our cases.

We have delineated several felonies, including armed robbery, as "inherently dangerous." See *Commonwealth v. Matchett*, 386 Mass. 492, 505 n.15 (1982). These felonies, as a matter of law, may support a conviction of felony-murder. There is no need to show a "conscious disregard for human life because the risk is implicit in the intent required for the felony." *Commonwealth v. Cook*, 419 Mass. 192, 206 (1994).

However, we have expressly held that unarmed robbery is not inherently dangerous to human life. See *Cook, supra* at 205. Felony-murder may only be premised on unarmed robbery if the Commonwealth proves that the defendant committed the felony with a conscious disregard for human life. See *Commonwealth v. Moran*, 387 Mass. 644, 651 (1982). The erroneous instructions permitted the jury to conclude that the actual or attempted armed or unarmed robbery was either inherently dangerous to human life or that the robbery was carried out with a conscious disregard for human life. It is not the province of the jury to determine whether a felony is inherently dangerous. Rather, it is incumbent on the judge to instruct that, should

---

[2]The judge instructed the jury on murder, manslaughter, armed robbery, and unarmed robbery.

[3]The judge repeated similar instructions on four occasions.

the jury choose to base a felony-murder conviction on a felony not designated as "inherently dangerous," the jury must determine that the felony was committed with a conscious disregard for human life in order to support a verdict of murder in the first or second degree.

Defense counsel did not object to the judge's instructions. However, the judge addressed this issue in denying the defendant's motion for a new trial. Therefore, we consider the erroneous instructions as though they were properly preserved. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 555 (1998). Evaluating the evidence in a light most favorable to the defendant, the judge's errors in the instructions on felony-murder were not prejudicial. The defendant's conduct, even in a light most favorable to him, evinces a conscious disregard of the risk to human life.

The defendant admitted chasing the victim after the drug deal went awry. He pursued the victim and forced the victim to stop his truck. He approached the victim and, after seeing the victim reach under his seat, hit him in the face. The defendant acknowledged that, although the victim attempted to flee, he continued to strike the victim. He continued the assault as two acquaintances joined in, knowing that one of the acquaintances customarily carried a knife. Although the defendant asserts that he stopped hitting the victim when he realized the victim was being stabbed,[4] the beating did not cease until another friend approached the scene. The defendant then fled to attend to his own minor injuries, leaving the dying victim in a dark, unfamiliar street.

At oral argument, the defendant asserted that *Commonwealth* v. *Plunkett*, 422 Mass. 634 (1996), was closely analogous to this case. We do not agree. In *Plunkett*, the jurors were instructed on felony-murder and premeditated murder. See *id.* at 635. The jurors returned a general verdict of guilty of murder in the first degree and a verdict of guilty of unarmed robbery. See *id.* at 636. However, the evidence in *Plunkett* did not warrant

---

[4]These facts do not permit a determination that the defendant withdrew from the felony. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 215 n.4 (1994); *Commonwealth* v. *Dellelo*, 349 Mass. 525, 531-532 (1965) (withdrawal requires "a determination by the defendant to go no further with the whole criminal enterprise" and an effective communication of that determination to cofelons "in sufficient time to permit [the cofelons] likewise to abandon the undertaking").

submitting the case to the jury on the theory of deliberate premeditated murder. Because it was unclear on what theory the jurors based the conviction of murder in the first degree, that conviction was reversed. The conviction of unarmed robbery, however, was affirmed. See *id.* at 639, 641. In *Plunkett,* the victim died because a T-shirt stuffed in his mouth during a robbery caused him to suffocate. See *id.* at 636. We noted that, although the jurors convicted the defendant of unarmed robbery, the jurors did not necessarily determine that the death occurred in the course of the robbery. We observed that, although there was sufficient evidence to justify a conclusion that the robbery was committed with "a conscious disregard for human life, that conclusion was not compelled." *Id.* at 639. We stated that the evidence could support either a determination of recklessness or a determination of conscious disregard for human life. See *id.* at 639.

Unlike in *Plunkett,* the jury in this case specifically determined guilt on a theory of felony-murder. The evidence fully supported the jurors' determination of guilty of murder in the first degree on the theory of felony-murder. In light of the facts set forth, *supra* at 363, the jury would have to conclude that the defendant acted with a conscious disregard for the risk to human life. Thus, on these facts, the errors in the instructions were not prejudicial.

2. *Jury request for clarification.* The defendant contends that the judge's response to a jury question was inadequate. Because the defendant did not object at trial, our review is limited to determining whether there was a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright,* 411 Mass. 678, 681 (1992).

After deliberating for nearly one hour, the jury submitted the following question to the judge: "Is it the responsibility of the Commonwealth to have proven to us beyond a reasonable doubt that Lawrence Gelmette did in fact murder one Steven Consoli?" The judge found the question ambiguous: the jury could have been asking whether they had to determine that Gelmette had stabbed the victim, causing death, or whether Gelmette acted with malice aforethought. After conferring with counsel, the judge sent the jury a note asking for clarification. The jury did not clarify the question; rather, they returned a verdict of guilty of murder in the first degree.

The proper response to a jury question is within the discre-

tion of the judge. See *Commonwealth* v. *Waite*, 422 Mass. 792, 807 n.11 (1996). See also *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997). Here, the judge was unclear what the jurors were asking and, rather than confuse them, the judge sought further clarification of the question which concerned the jurors. The decision was well within the judge's discretion.

The judge's request for clarification from the jurors does not require reversal. The jurors may withdraw a question or return a verdict before a question is answered. See *Commonwealth* v. *Harvey*, 397 Mass. 351, 359-360 (1986). The jurors are in the best position to determine whether the additional instruction was necessary, and by returning a verdict without the additional instruction, these jurors demonstrated that they did not need the question answered.[5] See *id.* Because the judge was acting within his discretion and the jurors determined they did not need a subsequent instruction, there was no substantial likelihood of a miscarriage of justice.

3. *Ineffective assistance of counsel.* The defendant offers a myriad of examples of how he was denied the effective assistance of counsel before and during trial. Under G. L. c. 278, § 33E, "the defendant bears the burden of showing that [defense] counsel's error[s were] 'likely to have unfairly influenced the jury's verdict.' " *Commonwealth* v. *Cormier*, 427 Mass. 446, 451 (1998), quoting *Commonwealth* v. *Plant*, 417 Mass. 704, 715 (1994); *Wright, supra* at 682. The judge found these errors did not render counsel ineffective. We agree. There is no indication that any of the alleged mistakes likely affected the conclusions reached by the jurors.

The defendant contends that defense counsel made several errors before trial. Those errors included: not moving to obtain criminal records of the Commonwealth's witnesses; not moving for discovery; not moving to suppress the defendant's statements to police on the basis that the defendant had used heroin on the morning of his arrest; and failing to pursue a motion for funds to retain an investigator. In denying the motion for a new trial, the judge said that, even assuming that any of the witnesses had criminal records, defense counsel's cross-examination

---

[5]Further, there is no merit to the defendant's contention that a conviction of felony-murder, predicated on unarmed robbery, demonstrates that the failure to answer the question left the jury confused.

would not have been more effective.[6] The judge also found that there was no additional discovery which would have been obtained by motion. All relevant information was voluntarily turned over by the district attorney. The judge also concluded that failure to obtain funds for an investigator did not affect defense counsel's ability to try the case competently. Finally, with regard to the motion to suppress statements, the judge was unpersuaded that the defendant had shown a reasonable likelihood of success on the merits and noted the "election not to file a motion to suppress . . . was reasonable in light of the advantages to [the defendant] of having his version of the facts put before the jury" without the defendant's testifying.

The defendant argues that defense counsel improperly failed to seek a decision on the admissibility of the defendant's criminal record if he were to testify. However, the judge determined the defendant's decision not to testify was not predicated on defense counsel's failure to obtain such a ruling. Rather, the defendant and his counsel thought it better to allow the defendant's version of the incident to be introduced through his statements to the police.

The defendant complains about incorrectly phrased jury instructions submitted by defense counsel. Because these instructions were not used, they could not have affected the jury's conclusions. The defendant also claims that defense counsel erred by failing to object to several statements by the prosecutor during closing argument.[7] According to the defendant, these statements implied that the defendant stabbed the victim and improperly bolstered the Commonwealth's joint venture theory. The arguments, when read in context, reflect the Commonwealth's theory of the case: the three attackers all loitered

---

[6]The witnesses included five police officers, two emergency medical technicians, a medical examiner, and two witnesses from the victim's place of employment whose testimony was unrelated to the defendant. The two other witnesses were Wayne Costa and Carmen Rodriguez, a percipient witness. Costa testified that Gelmette, not the defendant, stabbed the victim, and the defendant would not want to impeach that testimony. Rodriguez had no criminal record.

[7]In closing argument, the prosecutor said, "What is in their mind, what is in their heart, what is their intent when they take a knife and [stab a person]" (referring to the three attackers). He also said, "[T]hey're in this together: [the defendant], Curtis Roderick, Larry Gelmette. They're feeding in their own feeding ground, that's what they're doing here. They're together, feeding in their feeding ground at 1:30 in the morning and they're feeding at 2:40 in the afternoon and at 3:00, they're together."

in the same area, knew each other, and participated in the attack as joint venturers. The defendant also contends that defense counsel's failure to object to the felony-murder instructions made his assistance ineffective. We already have concluded that these instructions were not prejudicial.[8]

Throughout the course of a trial, defense counsel is called on to make numerous tactical decisions. "Any lawyer combing the record can try the case better." *Commonwealth* v. *Carlos*, 38 Mass. App. Ct. 929, 932 (1995). A list of subjective critiques of defense counsel's decisions, absent a showing that errors likely affected the jury's conclusions, is insufficient to support an ineffective assistance claim. Cf. *Commonwealth* v. *Roberio*, *ante* 278 (1998); *Commonwealth* v. *Street*, 388 Mass. 281, 285-286 (1983); *Commonwealth* v. *Westmoreland*, 388 Mass. 269 (1983). The defendant has failed to show that counsel's performance and tactical decisions created an error or errors which were "likely to have influenced the jury's conclusions." *Commonwealth* v. *Wright*, *supra* at 682. See *Commonwealth* v. *Cormier*, *supra* at 451.

4. *Conviction of unarmed robbery.* The judge imposed concurrent sentences for felony-murder and unarmed robbery. Although the defendant has not challenged the sentence for unarmed robbery as duplicative, "[w]e have held that a concurrent sentence may not be imposed for the underlying felony when a jury may have reached a verdict of murder on the theory of felony-murder." *Commonwealth* v. *Baez*, 427 Mass. 630, 635 (1998); *Commonwealth* v. *Gunter*, 427 Mass. 259, 275 (1998). The defendant was convicted of unarmed robbery and murder in the first degree, based solely on the theory of felony-murder. Therefore, the conviction of unarmed robbery and the sentence imposed thereon must be vacated.

5. *Relief pursuant to G. L. c. 278, § 33E.* "After full consideration of the cases and issues now before us, both as to the law and the evidence, as required by G. L. c. 278, § 33E, we conclude that the interests of justice neither require that the defendant[] be granted a new trial nor require the entry of [a] verdict[] of a lesser degree of guilt than the verdict[] returned by the jury" on the conviction of murder in the first degree.

---

[8]The defendant also raises several examples of defense counsel's failure sufficiently to argue issues or his unwise questioning of witnesses. We consider these issues to be well within the discretion of defense counsel. Counsel need not be perfect; he must only be effective in presenting the defendant's case.

*Commonwealth* v. *Brown*, 378 Mass. 165, 173-174 (1979). The defendant's claim that his conviction should be reduced because Gelmette was allowed to plead guilty of manslaughter is without merit. See *id.* at 173-174.

6. *Conclusion.* The conviction of unarmed robbery is remanded to the Superior Court where the judgment on that conviction is to be vacated, the verdict set aside, and the indictment dismissed. The conviction of murder in the first degree is affirmed.

*So ordered.*