NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12374

COMMONWEALTH  vs.  JOSE TORRES.

Middlesex.     December 4, 2017. - June 1, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Cypher, & Kafker, JJ.


Stalking.  Compensation of Victims of Violent Crimes.  Evidence, Medical record.  Practice, Criminal, Discovery, Redaction, Instructions to jury, Question by jury.


Indictment found and returned in the Superior Court Department on August 6, 2015.

The case was tried before Heidi E. Brieger, J.

The Supreme Judicial Court granted an application for direct appellate review.


Nancy A. Dolberg, Committee for Public Counsel Services, for the defendant.
Timothy Ferriter, Assistant District Attorney, for the Commonwealth.


GAZIANO, J.  In this appeal, we consider whether a defendant's conviction of stalking should be reversed where, at his trial, a Superior Court judge denied his motion for access to records held in the victim compensation file maintained by

the Attorney General.  The defendant was charged with nine offenses, including stalking, strangulation or suffocation, assault and battery causing serious bodily injury, assault by means of a dangerous weapon, and five counts of assault and battery on a family or household member.  On the eve of his scheduled trial, the defendant learned that the complainant had applied for the Attorney General's victim compensation program; this program provides compensation for damages suffered by some victims of crime.

The defendant sought access to records of the complainant's claim for compensation for dental services from the Attorney General as mandatory discovery, and, in the alternative, as third-party records, pursuant to Mass. R. Crim. P. 17, 378 Mass. 842 (1979), and the procedures of Commonwealth v. Dwyer, 448 Mass. 122, 145-146 (2006).  The judge concluded that the records could not be produced or disclosed to the defendant because the Attorney General's regulations mandated that such records be kept confidential.  Before us, the defendant reasserts these claims.  In addition, he challenges the judge's decision to redact significant portions of the complainant's dental records, which mentioned that she had applied for compensation.  Finally, the defendant challenges two of the judge's instructions, one on the Commonwealth's burden to prove stalking, and one on the complainant's interest in the outcome of the case.

We conclude that the defendant's motion for access to the victim compensation records held by the Attorney General should have been evaluated as a request for third party records under rule 17, notwithstanding the regulation requiring confidentiality of records.  In addition, the judge committed error by redacting the complainant's dental records.  We conclude also that, in responding to a confusing jury question, the judged erred by not clearly delineating the requirement that, to prove the offense of stalking, the Commonwealth must prove three specific incidents of stalking.  Accordingly, the defendant's conviction must be vacated and the matter remanded for a new trial.

1.  Background.  a.  Facts.  We recite the facts from evidence that was presented at trial.  The defendant met the complainant in March, 2014.  They began dating a few weeks later, and the defendant moved into the complainant's apartment shortly thereafter.  The complainant testified at trial that the defendant physically and verbally abused her during their relationship; she said that the defendant threatened to kill her if he saw her with another man, and that the defendant hit, choked, and shoved her.

Sometime around August, 2014, after the defendant and the complainant had separated, the defendant returned to her condominium and asked to speak with her.  They went into her

bedroom to talk. While they were talking, the defendant received a text message from another woman. The complainant asked the defendant why he wanted to speak with her if he was speaking to another woman. The complainant testified that the defendant became angry, grabbed her, pushed her up against a closet, and head-butted her between her nose and mouth. She said that her teeth broke as a result of this action. She also explained that those teeth had held in place a bridge that supported her false teeth; that she had to use "Super glue" to keep her bridge in place; and that she had difficulty eating in public and sleeping because of fear that she would swallow her bridge.

The complainant testified that she applied for victim compensation, through the Attorney General's office, to pay for the cost of having her teeth repaired. She said that she had applied with the assistance of a victim advocate in the district attorney's office. She applied after she reported the head-butting incident to the police, and had not had any knowledge of the compensation program prior to making her report. The complainant testified that her application for compensation had been approved, but that she had not received any funds and no longer intended to accept any funds because she had obtained employment.

The complainant acknowledged that she was aware that, in order to receive victim compensation funds, her injury had to be related to a crime, she had to cooperate with the prosecutor by testifying in court, and she could be in trouble if she made a false statement or filed a false application in the Attorney General's office.[1]

At a dentist visit in November, 2014, the complainant's dentist recommended that she remove her remaining top teeth and use dentures. At that visit, the complainant did not tell the dentist that the defendant's head-butt broke her bridge and her teeth. She testified that she told the dentist about the head butting incident before she reported it to the police. The dental records and the dentist's testimony indicated that, at the office visit in November, 2014, the complainant had advanced decay under her bridge. The decay was not present in an X-ray taken during a 2012 visit.

b. <u>Procedural history</u>. In August, 2015, the defendant was indicted in the Superior Court on nine counts: stalking,

---

[1] The victim compensation statute, G. L. c. 258C, § 2 (<u>c</u>), provides:

> "A claimant shall be eligible for compensation only if such claimant cooperates with law enforcement authorities in the investigation and prosecution of the crime in which the victim was injured or killed unless the claimant demonstrates that he possesses or possessed a reasonable excuse for failing to cooperate."

strangulation or suffocation, assault and battery causing serious bodily injury, assault by means of a dangerous weapon, and five counts of assault and battery on a family or household member.

The judge granted the Commonwealth's motion to admit redacted versions of the complainant's dental records,[2] over the defendant's objection.  The redactions were to eliminate any reference to the complainant's ability to pay and her application for victim compensation.

On Monday, March 14, 2016, the day scheduled for jury empanelment and opening statements in the defendant's trial, his counsel sought access to the Attorney General's file regarding the complainant's application for victim compensation, of which counsel had been made aware the previous Friday.  On that Friday, the prosecutor had provided defense counsel with a copy of the complainant's application for compensation, which had been held by the victim witness advocate in the district attorney's office.  The defendant argued that the Attorney General's file was mandatory discovery under Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004), because the Attorney General, as the "overarching prosecutor" for the Commonwealth,

---

[2] The Commonwealth originally intended to call the dentist, but she was called by the defendant.

was a party to the criminal case, and because the records showed an agreement, promise, or inducement between the prosecutor and the complainant.  In the alternative, he argued that the file should be subject to discovery under rule 17 as the record of a third party.  The judge initially ruled that the records in the file were discoverable and instructed the prosecutor to acquire the records.

At the start of the second day of trial, the Commonwealth reported that the Attorney General objected to producing the records.  The office of the Attorney General argued that 940 Code Mass. Regs. § 14.09 (2014), promulgated under G. L. c. 258C, § 4, supported this position.  The regulation provides:

> "All information received, obtained or maintained by the [d]ivision [of victim compensation in the Attorney General's office] in connection with any claim for compensation shall be maintained as confidential investigative material, and shall not be released or disclosed to any person or entity whatsoever, except authorized by the claimant or as otherwise provided by law."

The judge withheld ruling on the defendant's motion to produce the records because no party had provided a copy of the regulation for her review.  As the complainant was scheduled to testify first that morning, and because the records were relevant to her testimony, the defendant requested a ruling on the motion to produce before the complainant testified.  The

judge denied the motion because she did not find the records to be so material that the trial could not proceed.[3]

Following the complainant's direct examination, the defendant renewed his objection to proceeding without a ruling on whether the victim compensation records were discoverable. The defendant argued that the complainant's statement during direct examination that she did not plan to accept any award from the victim compensation fund was new information that made the records even more relevant. During the morning break, which took place in the course of the cross-examination of the complainant, the judge, without hearing further argument, ruled that the Attorney General was not required to disclose the records. The judge found that the exception to the confidentiality requirement, "as otherwise provided by law," did not include within its meaning an issued court order. Following a recess, and after the judge again declined to hear argument, the defendant moved for a mistrial. The judge denied that motion.

At the close of the evidence, the defendant requested an instruction that the jury "examine [the complainant's] credibility with particular care" because she had applied for

---

[3] The judge also denied the defendant's motions to dismiss the indictments or to preclude the complainant's testimony for failure to provide discovery.

victim compensation and because that application required that she cooperate in the prosecution of the defendant. The judge declined to give this instruction, and instead instructed the jury that they could "consider whether the witness has any motive to testify for or against either party, or the interest or lack of interest the witness may have in the outcome of the case."

After deliberating for an hour, the jury returned with questions for the judge; one of those questions was whether the complainant's payment from the victim compensation fund was dependent on the defendant's conviction or acquittal. Another question read, "which one of proofs need only one to be true?"

The defendant was convicted of stalking, in violation of G. L. c. 265, § 43 (a), and was acquitted of the other eight charges. He appealed from the conviction, and we allowed his petition for direct appellate review.

2. Discussion. The defendant challenges his conviction on four grounds. He argues that the judge's decision not to order the Attorney General to provide the defendant access to the victim compensation records violated his due process rights; the judge abused her discretion by allowing the introduction of redacted versions of the complainant's dental records and restricting the dentist's testimony on the topics of the cause of the complainant's dental problems, and her application for

victim compensation; the judge's decision not to instruct the jury to weigh the complainant's testimony with particular care was prejudicial error requiring a new trial; and the judge's response to a jury question likely caused confusion about the number of incidents the Commonwealth was required to prove to support a conviction of stalking, creating a substantial risk of a miscarriage of justice.

a.  Victim compensation records.  The defendant argues that the records in the Attorney General's file are mandatory discovery under Mass. R. Crim. P. 14 because they are in the possession of the Commonwealth and because the records show an agreement, promise, or inducement between the prosecutor and the complainant.  The defendant argues, alternatively, that the records held by the Attorney General are third-party records subject to discovery under rule 17, and that he satisfied his burden for discovery.  The Commonwealth contends that the records of the victim compensation fund are not subject to mandatory discovery, because the Attorney General is not a party to the criminal case, and because there was no agreement, promise, or inducement between the complainant and the district attorney.  The Commonwealth also argues that the judge properly determined that the records were confidential under 940 Code Mass. Regs. § 14.09, and that the defendant had sufficient opportunity to probe bias on cross-examination.

This court "uphold[s] discovery rulings 'unless the appellant can demonstrate an abuse of discretion that resulted in prejudicial error.'" Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 302 (2009), quoting Buster v. George W. Moore, Inc., 438 Mass. 635, 653 (2003). "'Mixed questions of law and fact[, however,] generally receive de novo review.'" McCarthy v. Slade Assocs., Inc., 463 Mass. 181, 190 (2012), quoting Commissioner of Revenue, supra at 303.

i. Rule 14. A. Whether the Attorney General was a party to the case. "Rule 14 (a) (1) [(A) (iii)] of the Massachusetts Rules of Criminal Procedure, requires, among other things, that, on motion, the prosecution must disclose any facts of an exculpatory nature within the possession, custody, or control of the prosecutor" (quotations omitted). Commonwealth v. Wanis, 426 Mass. 639, 643 (1998). The victim witness advocate is a member of the prosecution team and, accordingly, subject to the same duty to disclose as is a prosecutor. See Commonwealth v. Bing Sial Liang, 434 Mass. 131, 136-137 (2001). Therefore, the witness's application for compensation, held by the victim witness advocate in the district attorney's office, was properly disclosed to the defendant because it was subject to mandatory disclosure under rule 14. See id.

The records related to the complainant's application that are held by the Attorney General, however, fall outside the

scope of rule 14.  Rule 14 adopts a practical test for determining what information must be disclosed:  information that is "in the possession, custody, or control of the prosecutor."  See Mass. R. Crim. P. 14 (a) (1) (A).  "The prosecutor's duty [to disclose exculpatory information] does not extend beyond information held by agents of the prosecution team."  Commonwealth v. Beal, 429 Mass. 530, 532 (1999).  "Rule 14 does not apply here because the records sought are not within the control of the prosecution, or someone under the 'control of the prosecutor.'"  Commonwealth v. Lampron, 441 Mass. 265, 268 n.4 (2004).

There is no indication in this case that the Attorney General participated in the investigation or prosecution of the defendant.  The district attorney does not have access to the Attorney General's files.  As the practical indicia of the prosecutor's "possession, custody, or control" are absent, the records in the Attorney General's files are not subject to mandatory disclosure under rule 14.  See Commonwealth v. Ira I., 439 Mass. 805, 809-811 (2003) (information in possession of assistant principal was not subject to rule 14 disclosure because official did not act "as an agent of the prosecution or of the police"); Wanis, 426 Mass. at 643 (police internal affairs documents were not subject to mandatory discovery under rule 14 because department officers were not "participants in

the investigation and presentation of the case [or] police officers who regularly report to the prosecutor or did so in reference to a given case").  See also Commonwealth v. Donahue, 396 Mass. 590, 596 (1986) ("The prosecutor cannot be said to suppress that which is not in his possession or subject to his control," and thus "[o]rdinarily the prosecutor's obligation to disclose information is limited to that in the possession of the prosecutor or police" [quotations and citation omitted]); Commonwealth v. Campbell, 378 Mass. 680, 702 (1979) (declining to hold that prosecutor must disclose information held by Department of Corrections because "prosecutor has no duty to investigate every possible source of exculpatory information"). Contrast Commonwealth v. Woodward, 427 Mass. 659, 679 (1998) (medical examiner who conducted autopsy on murder victim was Commonwealth agent for purposes of Commonwealth's duty to preserve exculpatory evidence because medical examiner "participate[s] in the investigation or evaluation of the case and . . . either regularly report[s] or with reference to the particular case ha[s] reported to [prosecutor's] office" [citation omitted]).

Relying on G. L. c. 12, §§ 6, 27, the defendant argues that the Attorney General is the "overarching prosecutorial authority" for the Commonwealth and, therefore, a party to the

case.[4]  This argument, however, would render all files held by the Attorney General subject to disclosure under rule 14 in every criminal case.  It also would require us to depart from rule 14's instruction to make a practical determination about a prosecutor's "possession, custody, or control" when determining disclosure requirements.  Moreover, we previously have declined to hold that possession of documents by one government agency is sufficient to require mandatory discovery, absent control by the prosecutor or contribution by that agency to the prosecutor's investigation.  See Commonwealth v. Daye, 411 Mass. 719, 733 (1992) (no mandatory disclosure where Essex County "prosecutor [did not have] access to the Boston police department files");

---

[4] The defendant relies on G. L. c. 12, § 6 ("[The Attorney General] shall consult with and advise district attorneys in matters relating to their duties; and, if in his judgment the public interest so requires, he shall assist them by attending the grand jury in the examination of a case in which the accused is charged with a capital crime, and appear for the commonwealth in the trial of indictments for capital crimes.  [The Attorney General] shall also consult with and advise district attorneys in all civil actions brought pursuant to [G. L. c. 258], and may assist them in the defense of such actions"), and G. L. c. 12, § 27 ("District attorneys within their respective districts shall appear for the commonwealth in the superior court in all cases, criminal or civil, in which the commonwealth is a party or interested, and in the hearing, in the supreme judicial court, of all questions of law arising in the cases of which they respectively have charge, shall aid the attorney general in the duties required of him, and perform such of his duties as are not required of him personally; but the attorney general, when present, shall have the control of such cases.  They may interchange official duties").

Campbell, 378 Mass. at 702 (prosecutor not required to disclose material held by Department of Corrections). We therefore decline the defendant's invitation to depart from our well-established practice with respect to determinations whether a government agency is subject to the control of the district attorney for purposes of mandatory discovery under rule 14.

B. Whether the victim compensation program served as a promise or inducement. We turn to the defendant's argument that the Attorney General's file must be disclosed because it is evidence of a promise or inducement offered for the complainant's testimony. "Understandings, agreements, promises, or any similar arrangements between the government and a significant government witness is exculpatory evidence that must be disclosed . . . . [A]ny communication that suggests preferential treatment to a key government witness in return for that witness's testimony is a matter that must be disclosed by the Commonwealth." Commonwealth v. Hill, 432 Mass. 704, 715-716 (2000). See Mass. R. Crim. P. 14 (a) (1) (A) (ix), as amended, 444 Mass. 1501 (2005).

Here, however, the file is not evidence of an agreement, inducement, or reward between the prosecutor and a witness; rather, the victim compensation program is a government benefit program administered by an entity distinct from the district

attorney's office.[5]  In addition, testimony is not an explicit statutory requirement to receive compensation.  See G. L. c. 258C, § 2 (c) ("A claimant shall be eligible for compensation only if such claimant cooperates with law enforcement authorities in the investigation and prosecution of the crime in which the victim was injured or killed unless the claimant demonstrates that he possesses or possessed a reasonable excuse for failing to cooperate").

The complainant's application for victim compensation is unlike the plea agreement struck between the prosecutor and a cooperating witness in Hill, 432 Mass. at 715-716.  In Hill, the court concluded that the Commonwealth and the witness had a "'loose' agreement that 'consideration be shown'" in exchange for the witness's testimony.  Id. at 709.  The witness in that case pleaded guilty to a lesser included charge that carried a term of incarceration of two and one-half years, rather than the mandatory minimum of fifteen years that the witness had faced. Id.  In this case, unlike in Hill, the complainant was not herself charged with any crimes and there was not issue of an

---

[5] See G. L. c. 12, § 11K ("there shall be established within the department of the attorney general a division of victim compensation and assistance"); G. L. c. 258C, § 4 ("[t]he division of victim compensation and assistance shall administer the provisions of this chapter.  Subject to appropriation, the attorney general shall designate a program director of said division").

effort to negotiate a lesser sentence in exchange for testimony at trial. In addition, the complainant's efforts to secure victim compensation were processed through the office of the Attorney General, rather than being submitted through the office of the district attorney, i.e., the office that is responsible for prosecuting the defendant.

ii. Rule 17. As stated, the defendant moved under rule 17 for the production of records from the Attorney General, and the judge denied the motion. The judge found that 940 Code Mass. Regs. § 14.09, which provides, "[a]ll information received, obtained or maintained by the [d]ivision [of victim compensation in the Attorney General's office] in connection with any claim for compensation shall be maintained as confidential investigative material, and shall not be released or disclosed to any person or entity whatsoever, except authorized by the claimant or as otherwise provided by law," required her to deny the defendant's motion. In particular, the judge found that the phrase "otherwise provided by law" did not include a court order for discovery.

We conclude that the judge erred in finding that the Attorney General's regulation ended the inquiry; whether records are confidential does not affect whether they are discoverable. See Wanis, 426 Mass. at 642 ("A defendant's right of access to information gathered by an internal affairs division does not

turn on whether the investigatory materials are or are not subject to disclosure as public records"). Rather, confidential records, such as those in a victim compensation fund file, are subject to normal discovery rules. See id. at 644. At any potential retrial, the trial judge should consider the defendant's rule § 17 motion for access to the complainant's records under the Dwyer-Lampron standard for confidential, third party records. See Dwyer, 448 Mass. at 145-146; Lampron, 441 Mass. at 269.

The denial of the defendant's request for records under rule 17, prejudiced him. The defendant established that the records related to the complainant's application for compensation were relevant to her truthfulness. Moreover, the complainant's credibility and potential bias were likely significant questions for the jury. The jurors asked two questions that show the topic of the complainant's compensation was on their minds: "Is payment from the victim fund to [the complainant] dependent on conviction or acquittal? How much is the compensation?"[6] The defendant has a due process right to cross-examine a witness about a request for financial

---

[6] The judge instructed the jury to "rely on the collective memory of the evidence to answer those questions." Although defense counsel was consulted and agreed with the judge's response, the instruction was incorrect. The judge should have instructed that a conviction is not required in order for a victim to recover compensation.

compensation.  See Commonwealth v. Miranda, 458 Mass. 100, 109-110 (2010), cert. denied, 565 U.S. 1013 (2011).  The judge's rejection of the defendant's motion for access to the records under rule 17 hampered his ability to conduct that cross-examination and protect his rights.

b.  Jury instructions.  Approximately one hour after beginning deliberations, the jury asked the following question: "Which one of proof need only one to be true?"  The judge interpreted the jury's question as being about whether the Commonwealth needed to prove that the charged offense occurred on a specific date.  The judge instructed that the specific date was not an element of the crime and that the jury "may find him guilty only if you unanimously agree that the Commonwealth has proved beyond a reasonable doubt that he committed the offense on at least one specific occasion."  The defendant argues that this instruction created a substantial risk of a miscarriage of justice, because it obliterated the distinction between the offense of stalking, which requires three specific incidents to support a conviction, and the five charged offenses of assault, which each required only a single incident.  The Commonwealth contends that there was no error because jury instructions are evaluated as a whole and there is no risk of injustice where the judge was clear throughout that stalking required a finding that the defendant engaged in a series of acts over a period of time.

In her final charge, the judge properly instructed on the elements of stalking:  "In order to prove [the defendant] guilty of stalking, the Commonwealth must prove five things beyond a reasonable doubt.  First, that over a period of time, the defendant knowingly engaged in a pattern of conduct or a series of acts involving at least three incidents, directed at [the complainant]."  The subsequent instruction, that the Commonwealth was required to prove that the defendant "committed the offense on at least one specific occasion," created ambiguity and the potential for confusion as to the Commonwealth's burden for the stalking charge, because the judge did not make clear the requirement for three separate incidents to support a guilty verdict on the charge of stalking; indeed, the instruction misinformed the jury concerning a critical element of the offense.  "The fact that some of the instructions were correct is not determinative in this case, since we cannot know whether the jury were guided by the correct or the incorrect portion of the instructions" (quotation and citation omitted).  Commonwealth v. Richards, 384 Mass. 396, 403 (1981).  The jury question shows a fundamental confusion about the Commonwealth's burden of proof, increasing the risk created by an incorrect instruction.[7]  As "the issue of burden of proof goes

---

[7] Although a judge is not required "specifically [to]

to the very heart of the truth-finding function," Commonwealth v. Collins, 374 Mass. 596, 599 (1978), the inconsistent instructions on the Commonwealth's burden went to the core of the question for the jury. The conflicting instructions about an essential element of the Commonwealth's case, where the jury question revealed a fundamental confusion about the nature and extent of the Commonwealth's burden, created a substantial risk of a miscarriage of justice.

c. Redaction of dental records. Prior to trial, the parties agreed that the complainant's dental records were admissible, but disagreed on the extent to which redactions were necessary. The defendant argued that the records should be admitted without redaction. The judge adopted the Commonwealth's view and ordered the records redacted to remove the dentist's conclusion that the complainant's bridge broke because of decay and not because of spousal abuse. The judge also ordered redacted all references to the complainant's plan to use the compensation fund to pay for dental services. Specifically, the judge ordered the following redacted in full: "The xray show[s] that she has decay under the bridge . . . the

_____

address [the jury's] confusion," see Commonwealth v. Monteagudo, 427 Mass. 484, 488 (1998), where "the judge [is] unclear what the jurors [are] asking, the judge [may seek] further clarification of the question which concerned the jurors. [That] decision [is] well within the judge's discretion." Commonwealth v. Scott, 428 Mass. 362, 367 (1998).

bridge probably was loose because [of] the decay not because her husband hit her."  The judge ordered that the dentist would not be permitted to testify about matters redacted in the dental records.[8]

General Laws c. 233, § 79, " permits the admission in evidence, in the judge's discretion, of certified hospital records 'so far as such records relate to the treatment and medical history' with the proviso that 'nothing therein contained shall be admissible as evidence which has reference to the question of liability.'"  Commonwealth v. Dube, 413 Mass. 570, 573 (1992), quoting G. L. c. 233, § 79.  See Mass. G. Evid. § 803(6)(B) (2017).  "The statute has long been construed to permit the admission of a record that relates directly and primarily to the treatment and medical history of the patient, 'even though incidentally the facts recorded may have some bearing on the question of liability.'"  Dube, supra, quoting Leonard v. Boston Elevated Ry., 234 Mass. 480, 482-483 (1920).

---

[8] Other redacted notes include, "she doesn't have money"; "mail copy of records [and] FMR Plan to Middlesex District Att[orney]"; "with victim's comp[ensation]"; a reference to the district attorney; "[r]ecord review.  This [patient] has victim's comp[ensation].  After review of comp[lete] exam[ination], dental problems are not caused by spousal abuse, and will not be covered by victim's comp[ensation] insurance"; and "[e]xplain to patient that I talk[ed] to DA about her xray. I did no[t] send a letter.  The xray show[s] that she has decay under the bridge . . . the bridge probably was loose because [of] the decay [not] because her husband hit her."

The court construes G. L. c. 233, § 79, liberally to allow the admission of medical records.  Commonwealth v. Dargon, 457 Mass. 387, 394 (2010).

The judge abused her discretion by requiring redaction of the dentist's statement that "the bridge probably was loose because [of] the decay."  The statement "relates directly and mainly to the treatment and medical history of the patient . . . even though incidentally the facts recorded may have some bearing on the question of liability" (citation omitted).  See Commonwealth v. DiMonte, 427 Mass. 233, 242 (1998).  Indeed, the statement reflects the core role of a medical professional: diagnosing the cause of a physical ailment.  The dentist's note, therefore, is a "physical observation[] from which [exculpatory] inferences [may] flow," rather than a "conclusory fact central to the jury's inquiry."  See id. at 242, quoting Commonwealth v. Baldwin, 24 Mass. App. Ct. 200, 202 (1987), overruled on other grounds by Commonwealth v. Pagan, 445 Mass. 161 (2005).  Notably, the statement was made for purposes of medical diagnosis, and does not reflect any legal conclusions.[9]  In addition, the reason for creating the records was entirely for

_____

[9] Some notes in the dental records, such as "[treatment] will not be covered by victim's comp[ensation] insurance," are legal conclusions, and properly may be redacted, without removing the dentist's medical conclusions.

medical diagnosis and treatment, rather than having been prepared as part of a criminal investigation.  See DiMonte, supra.  Therefore, the statement is admissible evidence under G. L. c. 233, § 79, and it was error to order the records be redacted.[10]

d.  Instruction on witness credibility.  The defendant argues that the judge erred by not instructing the jury that they should scrutinize the complainant's testimony with "particular care" because of an agreement she had reached with the government.  The Commonwealth contends that there was no cooperation agreement between the complainant and the government, and there was no reward for her testimony.  We agree with the judge that the defendant was not entitled to a "particular care" instruction.

"Because of the possible improper influences on a jury that could develop from hearing testimony given pursuant to a written plea agreement that offers substantial benefits to a witness but

_____

[10] If this had been the only error, it would be harmless. Although the judge stated that the dentist would not be permitted to testify concerning from matters that had been redacted from the dental records, the dentist, in fact, did testify without objection that she believed the bridge was loose because of "advanced decay," and that teeth which show decay are weak and more prone to breaking.  Defense counsel relied on this testimony in her closing.  Cf. Commonwealth v. Elliot, 393 Mass. 824, 831-832 (1985), and cases cited (error in preventing impeachment harmless, where equivalent information was communicated to jury).

only if the witness tells the truth . . . the judge must specifically and forcefully tell the jury to study the witness's credibility with particular care." Commonwealth v. Ciampa, 406 Mass. 257, 266 (1989). Here, there was neither a plea agreement nor any type of written agreement that required the complainant to testify truthfully, and so the Ciampa instruction was not required. See Commonwealth v. Felder, 455 Mass. 359, 369 (2009). The prosecutor did not enter into an agreement with the complainant; rather, the complainant pursued a separate, statutory benefit, related to her report that she was the victim of a crime. The opportunity to pursue a statutory benefit does not rise to the level of a written agreement with a prosecutor that requires a Ciampa instruction. Cf. Commonwealth v. Sealy, 467 Mass. 617, 625 (2014) (defendant must have opportunity to impeach witness with evidence that she applied for visa that grants work authorization to noncitizen victims of crime who report crime to police, but visa application in this case was not "clearly . . . relevant to a motive to lie"). Additionally, as discussed, the Commonwealth had not offered a reward or inducement for the complainant's testimony. Given the lack of a nexus between the potential benefit to the complainant and her testimony, the pending application to the program does not rise to the level of a reward or inducement. The complainant's perception of the application process may create a motive to

lie, but the judge properly instructed the jury that they "may also consider whether the witness has any motive to testify for or against either party, or the interest or lack of interest the witness may have in the outcome of the case."  Such an instruction is sufficient, where the judge specifically highlighted the complainant's potential interest in the outcome of the case; a "particular care" instruction is not required.

3.  Conclusion.  The defendant's conviction is vacated and set aside.  The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.