## COMMONWEALTH vs. DANIEL ROSS.

No. 07-P-1183.

Suffolk. October 2, 2008. - November 18, 2008.

Present: CYPHER, GRASSO, & KANTROWITZ, JJ.

*Motor Vehicle,* Failure to stop. *Practice, Criminal,* Required finding, Instructions to jury.

At the trial of a criminal complaint charging the defendant with failure to stop for a police officer in violation of G. L. c. 90, § 25, a Boston Municipal Court judge properly denied the defendant's motion for a required finding of not guilty, where the officer pursuing the defendant was busy trying to avoid a collision with the defendant's vehicle and had little opportunity to show the defendant his badge, but nevertheless effectively notified the defendant that a police officer was telling him to stop by the activation of the officer's vehicle's siren, blue lights, and strobe lights, along with repeated attempts to pull alongside the car that the defendant was driving, and at least one request to pull over. [183-184]

At the trial of a criminal complaint charging the defendant with failure to stop for a police officer in violation of G. L. c. 90, § 25, the judge's instructions to the jury sufficiently outlined the elements of that offense without stating a requirement that the police officer be in uniform or display a badge when making the stop. [184-185]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on May 17, 2006.

The case was tried before *E. Sydney Hanlon,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Kathleen Celio,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. Notwithstanding a litany of charges,[1] the defen-

[1]Distribution of a class B substance, G. L. c. 94C, § 32A(*a*); distribution of a class D substance, G. L. c. 94C, § 32C(*a*); both being in a school zone, G. L. c. 94C, § 32J; failure to stop for a police officer, G. L. c. 90, § 25; and two civil traffic violations (a marked lanes violation, G. L. c. 89, § 4A; and a

dant was found guilty of but one — failure to stop for a police officer, G. L. c. 90, § 25. A $100 fine was levied, which was remitted.

On appeal, he claims that (1) the judge erred in denying his motion for a required finding of not guilty because there was no evidence that the officer was in uniform or displayed his badge when he signaled the defendant to pull over; and (2) the judge erred in her instructions to the jury by omitting the requirement that the police officer be in uniform or display a badge. We affirm.

*Facts.* On May 16, 2006, Detective Greg Walsh of the Boston police department was on patrol in an unmarked Ford Taurus in the Fields Corner area of Boston. He saw the defendant park a green Honda Accord in front of 157 Adams Street. The passenger, Kevin Forestdale, got out, entered the house, and within three to five minutes returned to the car with his left hand clenched as if he were holding something. Walsh, whose attention was drawn to them, decided to follow their car and radioed Detectives Michael Feeney and Kevin Guy (who were also driving an unmarked car in the Adams Street area) for assistance.

As they drove, Walsh noticed that the defendant's rear brake light was out, and decided to stop the car. Despite the activation of the officer's siren, blue lights, and strobe lights, the defendant did not stop, and a chase, at about thirty miles per hour, commenced. Walsh's attempt to pass the defendant's car on the left in order to signal him to pull over was met with the defendant swerving his car toward Walsh's car, forcing Walsh to brake and fall back. This happened three times. On one occasion, Walsh yelled, "Please pull over, pull over." While this was transpiring, Forestdale was continuously trying to duck out of view of the officers. Feeney observed the situation as he and Guy continued to follow Walsh.

After a minute, heavy traffic caused the defendant finally to stop. Walsh ran to the driver's side, pulled the defendant out of the car and handcuffed him, while Feeney went to the passenger

lights violation, G. L. c. 90, § 7). At a later date, another charge was levied, assault by means of a dangerous weapon, G. L. c. 265, § 15B. The drug charges were dismissed. He was acquitted of the assault by means of a dangerous weapon charge, and found not responsible for the traffic violations.

side and saw Forestdale attempting to swallow bags of drugs. Two chewed up bags of cocaine and seven chewed up bags of marijuana were recovered. Both men were arrested.

*Failure to stop.* The relevant language in the failure to stop statute states that "[a]ny person who, while operating or in charge of a motor vehicle . . . shall refuse or neglect to stop when signalled to stop by any police officer *who is in uniform or who displays his badge conspicuously on the outside of his outer coat or garment* . . . shall be punished by a fine of one hundred dollars." G. L. c. 90, § 25, as amended through St. 1989, c. 341, § 114 (emphasis added).

While a literal reading would require that, in order to establish a violation of the statute, the Commonwealth must prove that the officer in question was either in uniform or displayed his badge on his coat or garment, see *Commonwealth* v. *Materia,* 350 Mass. 785 (1966), "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable." *Commonwealth* v. *Gray,* 423 Mass. 293, 296 (1996) (*Gray*), quoting from *Commonwealth* v. *LeBlanc,* 407 Mass. 70, 72-73 (1990). "[A]s long as the goals of the statute are not thwarted, flaws of detail in its observance can be overlooked." *Gray, supra* at 295, quoting from *Commonwealth* v. *Babb,* 389 Mass. 275, 284 (1983). One purpose of the statute "is to ensure that the motorist is informed that the person demanding that he stop has the authority to make such a demand." *Gray, supra,* citing *Commonwealth* v. *Sullivan,* 311 Mass. 177, 178 (1942).

In *Gray,* a plainclothes officer in an unmarked car attempted to stop a speeding vehicle by using his strobe lights and horn and holding up his badge to the window while driving alongside the defendant's vehicle. "Literal compliance with the statute would have required the undercover officer to display the badge on the outside of his uniform coat where it would not have been as visible to the defendant." 423 Mass. at 296. This would have been "absurd" and "unreasonable." *Ibid.*

Here, the defendant argues that *Gray* stands for the proposition that an officer must at least display his badge in some way in order for the purpose of the statute to be met. While having a bright line may be preferable, *Gray* cautions otherwise. The badge in that case, plus the flashing strobe lights, "gave the

defendant sufficient notice that he was being stopped by a person with authority." *Ibid.* "[F]urtherance of the obvious purpose of the statute" was the most significant factor in *Gray*, and not the display of the badge. *Ibid.*

The purpose of the statute was met in the present case. The difference between *Gray*, where a badge was shown, and the present case is that the defendant in this case attempted to hit Walsh's car every time he drove alongside him. As such, the officer had little opportunity to display his badge as the officer in *Gray* did, because he was busy trying to avoid a collision.[2] Literal compliance with the statute would have required that Walsh display his badge to the defendant with one hand while simultaneously trying not to get hit with the other. That would have been "absurd" and "unreasonable." *Ibid.*

Through the officer's activation of the siren, blue lights, and strobe lights, along with repeated attempts to pull alongside the car and at least one request to pull over, "the defendant was effectively notified that he was being told to stop by a police officer." *Id.* at 295. Indeed, the evidence was such that both occupants of the car knew a police officer was attempting to pull their car over; in addition to the actions of the defendant, Forestdale not only continued to try to avoid being seen, but he attempted to swallow the drugs he was carrying. This permitted the inference that both men knew they were being followed by officers of the law and were trying to evade them.

*Jury instructions.* The defendant claims that the trial judge omitted an essential element of the crime from her instructions, specifically, the requirement that the police officer be in uniform or display a badge when making the stop. In her instructions to the jury, the judge read language directly from the statute (which included that the officer either be in uniform or display his badge).[3] Concerning the elements of significance, she told the jurors that the Commonwealth had to prove "that the defendant

---

[2]In addition, Walsh's use of his radio to stay in communication with the other officers may have further limited the use of his hands to potentially display his badge.

[3]The judge instructed:

"Massachusetts general law provides that any person who while operating or in charge of a motor vehicle refuses or neglects to stop

knew that the person demanding that he stop had the authority as a police officer to make such a demand." This was sufficient.

*Conclusion.* "[F]ailure to comply with [a] statute is not fatal where the purposes of the statute have not been frustrated." *Gray*, 423 Mass. at 296, quoting from *Commonwealth* v. *Babb*, 389 Mass. at 283. As the defendant knew he was being asked to stop by a person with the authority to do so, the purposes of the failure to stop statute were not frustrated in the present case. The judge's instructions were proper, and the defendant was not entitled to a required finding of not guilty.

*Judgment affirmed.*

---

when signaled to stop by any police officer who is in uniform or who conspicuously displays his badge — who displays his badge conspicuously on the outside of his outer coat or garment is guilty of violating the law.

"In order to prove this charge, the Commonwealth must prove beyond a reasonable doubt one[,] that the defendant was operating or in charge of a motor vehicle; two, that he refused or neglected to stop; three, that he was signaled to stop by a police officer; and four, that the defendant knew that the person demanding that he stop had the authority as a police officer to make such a demand."