## Commonwealth *vs.* Anita Rocheteau.

No. 08-P-92.

Suffolk. January 8, 2009. - April 3, 2009.

Present: Kantrowitz, Kafker, & Meade, JJ.

*Fraud. Evidence,* Fraud. *Practice, Criminal,* Argument by counsel, Verdict. *Rules of Criminal Procedure.*

At the trial of indictments charging five counts of larceny in violation of G. L. c. 266, § 30, and five counts of making a false claim to an agency or department of the Commonwealth in violation of G. L. c. 266, § 67B, the evidence supported the jury's general verdict convicting the defendant of a single count of making a false claim by knowingly presenting two bills for the same services rendered during the same time period. [19-22]

At a criminal trial, no error arose from the judge's requiring the defendant to present her closing argument first, in accordance with Mass.R.Crim.P. 24(a)(1). [22-23]

There was no merit to a criminal defendant's argument that her conviction should be vacated due to factually inconsistent verdicts. [23-24]

Indictment found and returned in the Superior Court Department on April 8, 2004.

The case was tried before *Patrick F. Brady,* J.

*Jonathan Harwell* for the defendant.

*Anne M. Thomas,* Assistant Attorney General, for the Commonwealth.

Meade, J. The defendant, Anita Rocheteau, was indicted for five counts of larceny of an amount over $250 in violation of G. L. c. 266, § 30, and five counts of making a false claim in violation of G. L. c. 266, § 67B. After a jury trial, the defendant was convicted of a single count of making a false claim. The defendant received required findings of not guilty or was found not guilty by the jury on the remaining indictments. On appeal, the defendant claims that there was insufficient evidence to support her conviction, the judge abused his discretion by requiring

her to present her closing argument first, and her conviction should be vacated due to factually inconsistent verdicts. We affirm.

1. *Background.* The defendant holds both a bachelor's and a master's degree in education, and she has over thirty years of experience working in the child care industry, including twenty years of experience billing for such services. She was the founder and president of Professional Family Child Care Services, Inc. (Professional), a company that contracted with the Commonwealth to provide day care services to low-income families. At the relevant time, Professional had in its system sixty child care providers who provided child care services in their homes. Professional was responsible for preparing and submitting bills to the Commonwealth based on child attendance information that providers reported to Professional. When the Commonwealth paid Professional, Professional then paid individual providers from these funds and retained for itself an administrative fee for its services. Professional billed three separate Commonwealth agencies: the Office of Child Care Services (OCCS)[1]; the Department of Transitional Assistance; and the Community Partnerships for Children (CPC), which was funded by the Department of Education and, specific to this case, the New Bedford public schools (New Bedford).

The defendant bore the sole responsibility for Professional's billing. Both the Department of Social Services (DSS) and OCCS trained her on how to bill for services. On each bill submitted to OCCS, there is a vendor certification that requires the person authorized to sign contracts for the vendor to verify the information contained therein. The defendant signed these for Professional.

At the time of the Commonwealth's investigation, Professional was in arrears with employment taxes, and the business was encumbered with tax liens. Professional also had outstanding loans that totaled approximately $80,000. The investigation revealed that the defendant had overbilled the Commonwealth over the course of two years, employing a variety of strategies to carry out the scheme. Relative to her conviction, the Commonwealth alleged that the defendant purposefully double billed

---

[1] OCCS replaced the agency then known as the Department of Social Services (DSS) as a funding source in 1998.

OCCS and New Bedford for the care of the same children during the same time period. In support of the conviction for the single count of making a false claim, the Commonwealth provided the jury with documentation of twenty instances where double billing occurred.

2. *Sufficiency of the evidence.* When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Commonwealth* v. *Hartnett*, 72 Mass. App. Ct. 467, 475 (2008), quoting from *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 152 (1999). Nor are we obligated to "reread the record from a [defendant]'s perspective." *Palmariello* v. *Superintendent of M.C.I. Norfolk*, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989). See *Commonwealth* v. *Duncan*, 71 Mass. App. Ct. 150, 152 (2008). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979).

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Jackson* v. *Virginia*, *supra* at 324 n.16; *Commonwealth* v. *Latimore*, *supra* at 677-678. To establish the defendant's guilt of making or presenting a false claim under G. L. c. 266, § 67B, the Commonwealth was required to prove that the defendant (1) made or presented a claim to a department or agency of the Commonwealth, (2) that was false, fictitious, or fraudulent, and (3) that the defendant knew the claim was false, fictitious, or fraudulent.[2] The defendant claims that there was insufficient evidence to establish that she made a false claim, because in

---

[2]General Laws c. 266, § 67B, inserted by St. 1980, c. 531, § 2, states:

"Whoever makes or presents to any employee, department, agency or public instrumentality of the commonwealth, or of any political subdivision thereof, any claim upon or against any department, agency, or public instrumentality of the commonwealth, or any political subdivision thereof, knowing such claim to be false, fictitious, or fraudulent, shall be punished by a fine of not more than ten thousand dollars or by

sixteen of the twenty instances presented to the jury there was insufficient evidence, which she argues requires the general verdict to be vacated. We disagree.

The foundation of the defendant's argument is the chronology of the twice-presented claims. In other words, because the Commonwealth alleged in sixteen of the twenty double billing instances that the first bill submitted was the "false claim," rather than the second bill, the evidence was insufficient on those sixteen occasions. From that point, the defendant maintains that because there was a general verdict, we cannot know if the jury relied on one of the four sufficient bases or on one of the sixteen claimed defective instances. See *Commonwealth* v. *Plunkett*, 422 Mass. 634, 635, 638 (1996). However, the foundation of the defendant's argument is faulty.

The key component to the defendant's claim is the indictment. While she concedes that the Commonwealth's theory supporting the indictment was one of double billing, the defendant claims that she was not actually charged with double billing. While the indictment could have been more clear, we find the argument to be without merit. The indictment alleged that the defendant

> "between on or about August, 1999 and on or about April 2000, did make or present to a department or agency of the Commonwealth, to wit: [OCCS], a false, fictitious or fraudulent claim against said [OCCS], to wit: payment vouchers to the [OCCS] for child care provided at New Bedford Pre-School which she also billed to the Department of Education, knowing such claim to be false, fictitious or fraudulent."

Although the indictment alleges that the defendant made a false claim to OCCS, it expressly states that the mechanism employed to carry out the scheme was to double bill OCCS and the Department of Education. Contrary to the defendant's argument, neither the Commonwealth's theory of how the false claim was carried out, nor its burden to prove that the defendant knowingly made such a claim, was dependent upon the order of presentation of the claims. Rather, the defendant's intent to defraud was

imprisonment in the state prison for not more than five years, or in the house of correction for not more than two and one-half years, or both."

established by her knowing presentment of two bills for the care of the same children during the same time period. The defendant cites no authority in support of her view of how the crime had to be proven. Also, contrary to the defendant's view, once the defendant knowingly created and executed a scheme to double bill the Commonwealth, the culpability for her actions does not turn on the happenstance or fortuity of the order in which the bills were presented or paid.[3] Our appellate function does not permit us to reread the record from the defendant's perspective. See *Commonwealth* v. *Duncan*, 71 Mass. App. Ct. at 152.

Nor is our conclusion affected by the fact that the Commonwealth used terms such as "good claim" and "bad claim" when the prosecutor explained the evidence to the judge during her opposition to the motion for a required finding of not guilty. Assuming the Commonwealth's view of its evidence burdens our determination of its sufficiency, the use of these terms merely acknowledged that the defendant was entitled to payment once, but not twice. Furthermore, the seeming lack of clarity in describing the bills as good and bad can be attributed to the fact that the Commonwealth was arguing that this same evidence constituted larceny, which requires an intent to steal as opposed to a knowing submission of a false claim. To illustrate the latter, however, the Commonwealth did describe a scheme of knowing falsity through the fact of the double billing itself.

In the end, the evidence presented at trial, when viewed in the light most favorable to the Commonwealth, demonstrated that the defendant was trained in, knew, and understood how the billing system worked. She was responsible for Professional's billing for many years and signed the vendor certifications herself. Despite

---

[3]Other than the order of presentment, the defendant's only challenge to the sufficiency of the evidence is that care for one child, D.B., among the twenty instances alleged, was not double billed. If this were accurate, then the defendant's argument based on *Commonwealth* v. *Plunkett, supra,* would carry some weight. However, it is not. In March of 2000, both OCCS and CPC were billed for the same care of D.B. during the same time period. In the CPC bill, D.B. is identified by his name and date of birth, and in the OCCS bill by his date of birth. When viewed in the light most favorable to the Commonwealth, this evidence permitted the jury to conclude that D.B.'s child care was twice billed for the same time period. See *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").

her training and decades of experience, the defendant submitted two separate bills for the same services provided to the same children for the same time period. The defendant's tax and loan debts provided the jury with a motive for her actions. From the evidence that she double billed on twenty occasions, the jury were entitled to conclude that her actions were not accidental, but rather that she knowingly submitted these claims that were false, fictitious, or fraudulent.

3. *Order of closing arguments.* The defendant claims that she was denied her constitutional right to present an effective closing argument because she had to give her argument first, before the jury heard from the Commonwealth. See *Herring* v. *New York,* 422 U.S. 853, 859 (1975); *Commonwealth* v. *Miranda,* 22 Mass. App. Ct. 10, 11, 22-23 (1986). The parties disagree whether the defendant preserved the issue at trial. We need not resolve that question because even if it were preserved, there was no error.

The language of the rule that sets the order of closing argument is clear and mandatory: "The defendant shall present [her] closing argument first." Mass.R.Crim.P. 24(a)(1), 378 Mass. 895 (1979). Despite this, the defendant claims that given the particular circumstances of this case, and the confusing nature of the evidence, a literal interpretation of the rule would produce an unjust result. See *Commonwealth* v. *Santosuosso,* 23 Mass. App. Ct. 310, 312-313 (1986). See also Mass.R.Crim.P. 2(a), 378 Mass. 844 (1979) ("These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of expense and delay"); Reporters' Notes to Mass.R.Crim.P. 2, Mass. Ann. Laws, Rules of Criminal Procedure, at 1321 (LexisNexis 2008) ("Where a literal interpretation of a rule and its application in a specific situation would lead to unnecessary expense or delay, would unduly complicate the proceedings, or would operate unfairly or produce an unjust result, that interpretation is to yield to the principle enunciated in Rule 2[a]"). We disagree for several reasons.

First, in *Commonwealth* v. *Seminara,* 20 Mass. App. Ct. 789, 799 (1985), we noted that the order of argument does not present a constitutional question, and that even though there are

"advantages to having the last word, there are countervailing advantages to having the first word." Second, we do not put much stock in the defendant's claim that it was unfair to make her close first because the Commonwealth chose at the last minute not to use a summary witness and left the defendant unclear as to what the precise allegations were. Because the Commonwealth bore the burden of proof, to the extent it presented a confusing case, it did so at its own peril. On all but one charge the defendant was the beneficiary of directed verdicts or findings of not guilty. Third, the circumstances of this case were not so unusual that the defendant was handicapped in her ability to argue her defense. Months before trial, the prosecutor met with defense counsel and explained how each document related to the various schemes alleged in the indictments. These same schemes were re-alleged during the prosecutor's opposition to the defendant's motion for required findings of not guilty, where the prosecutor explained how the evidence related to each count. Finally, defense counsel presented a clear and thoughtful closing argument that sounded the same theme and arguments that have been presented on appeal. There was no error.

4. *Inconsistent verdicts*. The defendant's last claim is that her conviction of making a false claim is logically inconsistent with the not guilty verdicts she received. The settled rule is that "mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). "The rule recognizes the power, possibly salutary, of juries to compromise and to act out of leniency." *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 151 (2008), quoting from *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 33 (1984).

We are aware of no case where this court or the Supreme Judicial Court reversed a conviction based on factually inconsistent verdicts.[4] To the defendant's credit, she recognizes this fact. See *Commonwealth* v. *Hamilton*, 411 Mass. 313, 324

---

[4]A factually inconsistent verdict is distinct from a legally inconsistent verdict, which occurs when there exists "no set of facts that the government could have proved in the particular case that would have resulted in the verdict at issue." *Commonwealth* v. *Gonzalez, supra* at 151 n.8. See *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584 (1999).

(1991) (factually inconsistent verdicts do not provide a basis for relief); *Commonwealth* v. *Tennison*, 440 Mass. 553, 566 (2003) ("mere inconsistency in verdicts does not render a guilty verdict erroneous"). We fail to see how this case presents an occasion to reverse that trend.

*Judgment affirmed.*