NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1036

COMMONWEALTH

vs.

DANIEL J. O'QUINN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendant was found guilty of negligent operation of a motor vehicle and failure to stop for police.[1] On appeal, the defendant claims there was insufficient evidence to support those convictions. We affirm.

Discussion. The defendant claims that because he did not exceed the speed limit; did not actually endanger any pedestrians; did not actually hit any vehicles; used the

---

[1] The jury found the defendant not guilty of operating a motor vehicle while under the influence of liquor. The judge found the defendant not responsible for a marked lanes violation and possession of an open container of an alcoholic beverage in a motor vehicle.

breakdown lane appropriately;[2] and stopped at a stop sign,[3] there was insufficient evidence to support the jury's conclusion that he operated the vehicle in a negligent manner. For the same reasons, as well as the bizarre explanation he provided the officers for his failure to stop,[4] the defendant also argues that his conviction for failure to stop for police was unsupported by sufficient evidence. We disagree.

"When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt'" (citation omitted). Commonwealth v. Rocheteau, 74 Mass. App. Ct. 17, 19 (2009). "Rather, the relevant 'question is whether, after viewing the evidence in the light most favorable to the

---

[2] The defendant claims that the jury could infer that he was using the breakdown lane properly as a "climbing lane" for slow traffic. However, the officer testified that in the town of Shelburne, where he personally observed the defendant driving in the breakdown lane, there is only one travel lane. The breakdown lane is only a travel lane in the city of Greenfield.

[3] Whether the defendant actually stopped at the stop sign was a question of fact for the jury to resolve, and the jury could reasonably infer from the officer's testimony that the defendant did not do so.

[4] The defendant, who has been diagnosed with bipolar disorder, claimed that he had been poisoned by consuming anti-freeze and needed to get home to obtain an "antidote," that being liquor. In reality, the defendant was apparently suffering from a poison ivy rash.

prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id., quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Ayala, 481 Mass. 46, 51 (2018). When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979); Latimore, supra at 677-678.

To establish the defendant's guilt of negligent operation of a motor vehicle, in violation of G. L. c. 90, § 24 (2) (a), the Commonwealth must prove that the defendant (1) operated a motor vehicle; (2) upon a public way; and (3) negligently so that the lives or safety of the public might be endangered. See Commonwealth v. Tantillo, 103 Mass. App. Ct. 20, 26 (2023); Commonwealth v. Daley, 66 Mass. App. Ct. 254, 255 (2006). "General Laws c. 90, § 24 (2) (a), 'only requires proof that the lives or safety of the public _might_ be endangered, not that they _were_ endangered." Tantillo, supra, quoting Daley, supra at 256. "The question is whether the defendant's driving had the potential to cause danger to the public, not whether it actually did." Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015). "One may operate a vehicle 'in such a way that would endanger

3

the public although no other person is on the street.'" Tantillo, supra, quoting Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005).

As for the defendant's guilt of failure to stop for police, in violation of G. L. c. 90, § 25, the Commonwealth was required to establish that he refused or neglected to stop when signaled to stop by a person he knows is a police officer. See Commonwealth v. Ross, 73 Mass. App. Ct. 181, 183-184 (2008).

Here, at approximately 3:15 P.M. on a rainy day, the defendant was driving his car, with both passenger tires completely in the breakdown lane, "roughly within the speed limit" on a state highway in moderate traffic. A uniformed police officer activated the overhead emergency blue lights on his marked police cruiser and attempted to initiate a traffic stop of the defendant. Operators of other motor vehicles pulled over in response, and the officer was traveling directly behind the defendant's car. The defendant continued driving in the breakdown lane "for a substantial distance," and the officer activated his horn and siren, to no avail. The defendant eventually left the breakdown lane to make a left turn at an intersection, but he kept driving, in clear disregard of the officer's signals to pull over.

At one point during the pursuit, on a "very narrow" downhill roadway with "a lot of traffic in that area," the

4

police officer nearly collided with the defendant's motor vehicle from behind. The officer saw the defendant look in his side mirror and motioned with his hand outside his cruiser to pull over, and the defendant pointed forward in response. Then, the defendant "continued through" a four-way "stop sign area" while pedestrians were crossing the street. After having led the officer through multiple towns, the defendant's motor vehicle finally jumped a roadside curb and landed in his driveway. He then ran from his vehicle into the residence. Shortly thereafter, the defendant emerged with a "decent size bottle of alcohol," from which he proceeded to drink.

Three other police officers arrived, and the defendant re-entered the residence, not wanting to speak with them. Officers entered through an open door and observed the defendant having "red, kind of bloodshot and glassy, almost marbleish-like eyes" and slurring his speech. The defendant agreed to participate in field sobriety tests and, based on his faulty performance that led the officers to believe that he was intoxicated, the defendant was placed under arrest. Officers conducted a search of the defendant's motor vehicle, and they found a can of alcoholic malt beverage, in the center console.

These facts, viewed together in the light most favorable to the Commonwealth, were sufficient for the jury to infer that the defendant operated his motor vehicle in a negligent manner and

5

failed to stop for police.  See Ross, 73 Mass. App. Ct. at 184; Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 34-36 (2007); Daley, 66 Mass. App. Ct. at 256.  See also Commonwealth v. Larose, 483 Mass. 323, 332 (2019) (drivers pose serious danger to themselves and others when failing to operate in conformity with applicable traffic rules, "particularly one as fundamental as the directive to drive entirely within one lane").  During a rainy afternoon, the defendant drove for a substantial distance in the breakdown lane on a state highway with moderate vehicle traffic, failed to stop at a stop sign while pedestrians were crossing, and led an officer on a chase through multiple towns, which the jury could infer had the potential to cause danger to the public.  The jury also could have inferred that the near collision between the officer and the defendant was due, at least in part, to the defendant's conduct.  Moreover, "[t]he fact that the jury ultimately did not convict the defendant of [operating while under the influence of alcohol] does not preclude their consideration of the evidence of intoxication in considering the negligent operation charge."  Commonwealth v. Ross, 92 Mass. App. Ct. 377, 380 (2017).  This included the defendant's appearance, his slurred speech, the alcoholic beverage found in his motor vehicle, and his failure to successfully complete the field sobriety tests.  Finally, the jury was entitled to reject the defendant's "antidote" excuse as

6

a valid reason for the defendant's refusal to stop when signaled to do so by a police officer in a marked cruiser.

<u>Judgments affirmed</u>.

By the Court (Meade, Blake & Brennan, JJ.[5]),

Clerk

Entered:  August 8, 2024.

---

[5] The panelists are listed in order of seniority.