Commonwealth *v.* Fernandez.

COMMONWEALTH *vs.* RADHAMES FERNANDEZ.

No. 98-P-51.

Essex. January 6, 2000. - February 8, 2000.

Present: ARMSTRONG, SMITH, & BROWN, JJ.

*Controlled Substances. Practice, Criminal,* Verdict. *Words,* "Actual posses-
sion," "Constructive possession."

At the trial of indictments, the evidence was sufficient to warrant the jury's
finding beyond a reasonable doubt that the defendant possessed heroin
with intent to distribute, that he possessed heroin with intent to distribute
within 1,000 feet of a school zone, and that he was knowingly present
where heroin was kept, and the judge's instructions on possession,
constructive possession, and joint possession were not erroneous. [531-535]

COMPLAINT received and sworn to in the Lynn Division of the
District Court Department on August 24, 1995.

The case was tried before *Timothy H. Gailey,* J.

*Nadell Hill* for the defendant.

*Daniel I. Smulow,* Assistant District Attorney, for the Com-
monwealth.

BROWN, J. Convicted of possession of heroin with intent to
distribute, possession of heroin with intent to distribute within
1,000 feet of a school, and knowingly being present where
heroin is kept, the defendant has appealed, alleging that the
evidence was insufficient to sustain his convictions.

At about 7:45 P.M. on August 23, 1995, two plainclothes of-
ficers in a van were conducting a surveillance of an area of
Lynn where residents had been complaining about "beeper
meets," that is, drug sales conducted by means of a prearranged
rendezvous between a buyer and seller, with the seller typically
picking up the buyer in a motor vehicle. The officers' attention
was drawn to a man kneeling on a street corner, looking into
the vehicles that passed. The officers watched the man, and
within five minutes, a gray Ford Tempo automobile pulled up

opposite the man on the corner. The man, later identified as Richard Arasco, got into the back seat of the Tempo. The Tempo pulled away and the officers, in their van, followed. The Tempo turned a corner and stopped. The officers pulled their van next to the Tempo. Officer Holey, in the van's passenger seat, saw the defendant, in the front passenger seat of the Tempo, hand to Arasco, in the back seat of the Tempo, a package composed of a number of glassine bags. Officer Holey got out of the van and yelled, "Police!" Arasco got out of the back of the Tempo and tried to flee. Officer Holey detained him. On the ground by the rear door through which Arasco had gotten out of the Tempo, Officer Holey saw a number of glassine bags bound together with an elastic.

As Officer Holey was about to handcuff Arasco, he saw the front passenger door of the Tempo open. When Holey went toward the defendant, Arasco fled. Holey placed the defendant under arrest. He then looked into the Tempo, and saw in the rear of the car on the floor another bundle of glassine bags wrapped with an elastic.

At the time Arasco had gotten out of the Tempo, the driver, one Quavis, had also gotten out and fled, pursued by Officer Holey's partner. Officer Holey saw Quavis throw something as he passed the officers' van. Officer Holey later found scattered about the inside front of the van a cigarette box, "a number of glassine bags of heroin in bundle form,"[1] later determined to total eighty-two individual packets,[2] and some United States currency.

The judge, probably reading from a pattern jury instruction, told the jury that actual or constructive possession would suffice to prove the possession element of the charge, and he defined both kinds of possession.[3] He also defined joint possession.

The defendant first contends that in instructing the jury not only on actual possession but on constructive possession as

---

[1]Officer Holey described a bundle as ten packets of heroin tied together with an elastic.

[2]Although there was no testimony touching directly on the point, it may be inferred from the exhibits introduced at trial that the packets of heroin the police recovered from their van totaled eighty-two.

[3]In his closing, the prosecutor briefly defined actual and constructive possession, and then went on to say:

> "This is not a constructive possession case, members of the jury. This is a direct possession case because this defendant just had these bags of

well, the judge permitted the jury to find the defendant guilty on a theory for which there was an insufficient evidentiary basis. The defendant argues that while the evidence may have been sufficient to establish the defendant's *actual* possession of the heroin he handed to Arasco (which, it may be inferred, was the heroin found on the floor of the Tempo and on the ground by the rear door of the Tempo), the evidence was insufficient to establish that the defendant had *constructive* possession of that heroin, or the heroin that the driver threw into the police van.

The defendant's argument is based in part on a misunderstanding. To erase any confusion, constructive possession and actual possession are not different theories in the way that deliberate premeditation and felony-murder are different theories, *Commonwealth* v. *Plunkett*, 422 Mass. 634 (1996), or in the way that homicide as a principal and homicide as a joint venturer are different theories, see *Commonwealth* v. *Green*, 420 Mass. 771 (1995); *Commonwealth* v. *Flynn*, 420 Mass. 810 (1995). Rather, they are simply two possible ways of defining the same legal principle. The essential elements of either sort of possession are knowledge plus ability and intention to control. Compare *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 801 (1992) (an actual possession case in which the court defined possession as "the intentional exercise of control over an item"), with *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984) (in which the court defined constructive possession as awareness of contraband coupled with ability and intention to control it). The apparent differences in these definitions arise from the fact that physical possession necessarily entails the ability to control, and would ordinarily entail knowledge as well, thus making it unnecessary, in an actual possession case, to list these elements as part of the definition of possession. Once this point is taken into account, it will be seen that the two sorts of possession are substantially identical.

Even were the two kinds of possession treated as discrete legal theories, it would avail the defendant nothing. The jury here were warranted in finding that the defendant possessed all of the packets of heroin recovered by the police, including those apparently jettisoned by Quavis. Officer Holey testified

heroin in his hand, and he was handing them to Mr. Arasco in the back seat. And he exercised — was in direct control."

that he saw the defendant, in the front passenger seat of the gray Tempo, hand to Arasco, the man in the rear seat, what he recognized as a "bundle" of heroin, that is, a standard commercial unit consisting of ten packets of heroin bound together. The police immediately interrupted this transaction, and later found one bundle in the rear of the Tempo on the floor, and one bundle on the ground by the door of the Tempo through which Arasco had gotten out. From this evidence, the jury could infer that the defendant had handed both bundles to Arasco, who dropped them in his flight. The evidence was sufficient to establish that the defendant had exercised "control and power," *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), over the bundles of heroin found in the Tempo and on the ground. Contrast *Commonwealth* v. *Cormier*, 41 Mass. App. Ct. 76, 79-80 (1996).

The evidence also permitted the jury to find that the defendant possessed the heroin that the driver, Quavis, threw into the police officer's van. Quavis, driving the gray Tempo, and the defendant, in the front passenger seat, had picked up Arasco on the street. Soon thereafter, Officer Holey saw the defendant hand to Arasco what he recognized as a bundle of heroin. From this evidence, the jury properly could conclude that the defendant and Quavis were acting in concert to sell heroin. When Quavis fled, he discarded eighty-two packets of heroin packaged in bundle form. See the certificate of analysis, No. 082659, introduced as an exhibit.[4] Officer Holey testified that the amount of heroin Quavis discarded was consistent with distribution rather than personal use. Officer Holey also testified that the heroin Quavis discarded was packaged similarly to that found in the car and on the ground. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 652 (1990). Cf. *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 496-497 (1991) (inference that a quantity of drugs was drawn from a larger stash may be supported by a similarity between the packaging of the sample and the packaging of the drugs in the stash). It was open to the jury to infer from the totality of this evidence that Quavis was holding for his and the defendant's commercial operation a stash that he and the defendant jointly possessed. Cf. *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 (1983) (jury were warranted in finding that the defendant possessed with intent to distribute the stash

---

[4]Copies of the certificates of analysis that were introduced as exhibits at trial were provided to this court by the District Attorney's office.

of heroin that was in the paint can her husband threw out the window as the police sought entry at the door of the apartment).

The defendant's argument that the jury could not properly have found joint possession without first finding joint venture (on which they were not instructed) is based on a misunderstanding of the law. A finding of joint venture is not a precondition for a finding of joint possession. See *Commonwealth* v. *Pichardo*, 38 Mass. App. Ct. 416, 416 n.1 (1995); *Commonwealth* v. *Campiti*, 41 Mass. App. Ct. 43, 47 & n.3 (1996). The instructions the jury were given on constructive possession and joint possession provided them with the necessary legal basis for a finding that the defendant possessed the heroin that Quavis discarded.

The defendant's reliance on *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629 (1997), is misplaced. That aspect of the *Zuluaga* opinion cited by the defendant suggests that where the evidence presents alternative factual bases on which the jury could return a guilty verdict, and as to at least one of those bases the evidence is not sufficient to sustain a guilty verdict, a reviewing court must reverse if it cannot fairly conclude that the verdict was not premised on the deficient basis.[5] *Id.* at 641. The facts of the case at bar raise no such concerns; the evidence was sufficient to establish the defendant's possession of each separate quantity of heroin the police recovered.

Moreover, we note that the holding in *Zuluaga* is quite limited. It does not stand for the general proposition that where, upon some view of the facts, no matter how strained, a jury's verdict would not be supported by legally sufficient evidence, a defendant is entitled to judgment in his favor. The principles delineated in *Zuluaga* come into play only where there is a real possibility that a defendant was convicted on the basis of facts from which no rational trier of fact could draw an inference of guilt.[6]

In sum, there was sufficient evidence to warrant the jury's

[5]In *Commonwealth* v. *Zuluaga*, 43 Mass. App. Ct. 629 (1997), the Commonwealth presented evidence relating to two transactions that occurred in different places and at different times. Legally sufficient evidence as to the defendant's guilt was presented only with respect to one of those transactions. The judge, however, left it open to the jury to find the defendant guilty as to either transaction. This, the court deemed, was error.

[6]Thus, *Zuluaga* does not permit parsing the evidence as to a single transaction, suggesting that the jury might have rejected some of the Commonwealth's evidence, rendering the basis for the verdict insufficient. An appellate court

finding beyond a reasonable doubt that the defendant possessed heroin with intent to distribute, and possessed heroin with intent to distribute within 1,000 feet of a school zone. The evidence was also sufficient to support the defendant's conviction for knowingly being present where heroin is kept (G. L. c. 94C, § 35). Evidence that the defendant jointly possessed the stash held by Quavis also permitted the jury to infer the defendant's knowledge of the heroin that Quavis was carrying.[7]

*Judgments affirmed.*

---

never speculates as to the weight actually accorded by the jury to the properly admitted evidence. As long as the evidence, as presented, meets the familiar *Latimore* standard of sufficiency, our inquiry is finished. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

Thus, a defendant convicted of assault and battery with a dangerous weapon cannot (successfully) argue that the jury might have disbelieved the evidence as to the existence of the dangerous weapon, rendering the government's evidence legally insufficient. However, were a weapon used in one incident, and none in connection with another, separate incident, a defendant might be entitled to reversal — at least if the judge failed to distinguish between the two episodes in his instructions, *and* there was a plausible basis for the jury to have rejected the evidence as to one incident and not the other.

[7]Because knowingly being present where heroin is kept (G. L. c. 94C, § 35) is not a lesser included offense of possession of heroin, *Commonwealth* v. *Rodriguez*, 11 Mass. App. Ct. 379, 380-381 (1981), the defendant's conviction under § 35 was not duplicative of his conviction for possession with intent to distribute (c. 94C, § 32), even if the jury might have used the same evidence to establish possession under § 32 and knowledge under § 35. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 389 (1998).