NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-440                                          Appeals Court

COMMONWEALTH  vs.  NOEL INOA.

No. 19-P-440.

Norfolk.     January 7, 2020. - April 2, 2020.

Present:  Wolohojian, Milkey, & Shin, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Words,
     "Serious bodily injury."


Indictment found and returned in the Superior Court
Department on March 28, 2013.

The case was tried before Peter B. Krupp, J.


Geraldine C. Griffin for the defendant.
Tracey A. Cusick, Assistant District Attorney, for the
Commonwealth.


SHIN, J.  A jury convicted the defendant of assault and

battery by means of a dangerous weapon causing serious bodily

injury.  See G. L. c. 265, § 15A (c) (i).  The question on

appeal is whether there was sufficient evidence of "serious

bodily injury" as defined in G. L. c. 265, § 15A (d), which sets

out three alternative ways to prove that element of the crime.

The defendant contends that because the judge instructed the jury on all three alternative definitions, and the jury returned a general verdict, the evidence must be sufficient to establish serious bodily injury under each definition.  We disagree and conclude that the alternative definitions do not constitute distinct theories of guilt, so we need determine only whether the Commonwealth met its burden of proving serious bodily injury under at least one of them.  As we further conclude that the Commonwealth met that burden, we affirm.

Background.  The jury could have found the following facts, viewing the evidence in the light most favorable to the Commonwealth.  On December 20, 2012, the defendant, then an inmate at the Norfolk County house of correction, walked up behind another inmate and slashed his face with a razor taped to a spoon.  The victim suffered a gash, twenty to twenty-two centimeters (around eight inches) long and one centimeter deep, running across the lower right side of his face and part of his neck.  Staff in the medical unit applied pressure to the wound and gave the victim oxygen after he reported feeling lightheaded.

The victim was then taken by ambulance to a hospital. There, according to emergency department records, plastic surgery was consulted on an "[u]rgent" basis "because of the time [it] will take to repair this laceration, and to a lesser

extent, because it violated the fascia[1] posteriorly." A plastic surgeon sutured the wound, and the victim was discharged with instructions to follow up with plastic surgery in ten to fourteen days. Color photographs of the wound before and after suturing were admitted in evidence.

Discussion. General Laws c. 265, § 15A (d), defines "serious bodily injury" in three ways: bodily injury resulting in (1) "a permanent disfigurement," (2) "loss or impairment of a bodily function, limb or organ," or (3) "a substantial risk of death." See Commonwealth v. Scott, 464 Mass. 355, 357 (2013) (G. L. c. 265, § 13A [c], "set[s] forth three distinct routes for establishing serious bodily injury"); Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. 162, 164 (2005) (§§ 13A [c] and 15A [d] "set forth substantially identical definitions of 'serious bodily injury'"). The judge instructed the jury in accordance with the statute, and, as noted, the jury returned a general verdict. As a result, the defendant argues, we cannot uphold his conviction unless we conclude that the evidence is sufficient to establish serious bodily injury under each of the statute's alternative definitions.

---

[1] "Fascia" is "[a] sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles and separates their several layers or groups." Stedman's Medical Dictionary 700 (28th ed. 2006).

In so arguing, the defendant relies on "the general rule in the Commonwealth . . . that there must be a new trial if . . . a jury, given [multiple] theories of guilt, returned a general verdict, and the evidence supported a guilty verdict on only [some] of those theories."  Commonwealth v. Plunkett, 422 Mass. 634, 638 (1996).  Cf. Griffin v. United States, 502 U.S. 46, 56-60 (1991) (general verdict may stand so long as evidence sufficient to support one theory of guilt because jury can be presumed not to have convicted on factually inadequate theory).  But this rule does not apply in every situation where there is more than one way to prove an element of the crime, as the defendant suggests.  What is critical is whether the jury were presented with distinct "theories of guilt," Plunkett, supra, meaning "alternative means by which to commit the crime," Commonwealth v. Smith, 458 Mass. 1012, 1014 (2010).  Only then must we examine the evidence separately as to each theory if the jury returned a general verdict.  See id.

A few examples help illustrate the distinction.  Distinct theories of guilt in this context include the differing theories of murder in the first degree (deliberate premeditation, felony-murder, or extreme atrocity or cruelty), see Plunkett, 422 Mass. at 635; Commonwealth v. Floyd P., 415 Mass. 826, 832-833 (1993), and the differing theories of manslaughter (voluntary or involuntary), see Commonwealth v. Accetta, 422 Mass. 642, 646-

647 (1996). Another example, provided by the defendant, is Commonwealth v. Manzelli, 68 Mass. App. Ct. 691, 695 n.8 (2007), in which this court held that interception of an oral communication and attempted interception of an oral communication are differing theories of criminal liability under G. L. c. 272, § 99. What these cases have in common is that the alternate theories presented to the jury were "separate, distinct, and essentially unrelated ways in which the same crime can be committed," Commonwealth v. Santos, 440 Mass. 281, 288 (2003), requiring on appeal that the evidence as to each theory be assessed separately.

In contrast, courts have not assessed the evidence separately as to alternate theories that were merely related ways of proving the same legal concept. For example, in Smith, 458 Mass. at 1013, the court held that the alternative knowledge clauses in the armed home invasion statute -- requiring either that the defendant "enter the dwelling place knowing that someone is present or, if the [defendant] does not know before entering that someone is present, that he [or she] remain within after gaining such knowledge" -- are not distinct theories of guilt because "[w]hat matters for purposes of the armed home invasion statute is that a defendant has knowledge that someone is present in the dwelling," regardless of "the timing of when the defendant gains that knowledge." Accord Commonwealth v.

Martinez, 85 Mass. App. Ct. 288, 290-291 (2014).  In a similar vein, the court held in Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009), that principal and joint venture liability are not distinct theories of guilt because what matters in a joint venture case is that the defendant knowingly participated in the crime with the required criminal intent, regardless of his or her "precise role in the commission of the crime."[2]  Other examples include the alternative forms of larceny (larceny, embezzlement, or larceny by false pretenses), see Commonwealth v. Mills, 436 Mass. 387, 393 (2002), the alternative prongs for establishing malice, see Commonwealth v. Riley, 467 Mass. 799, 821-822 (2014); Commonwealth v. Avellar, 416 Mass. 409, 421-422 (1993), and constructive versus actual possession, see Commonwealth v. Fernandez, 48 Mass. App. Ct. 530, 531-532 (2000).  These "are not different theories in the way that deliberate premeditation and felony-murder are different theories," but "are simply [different] possible ways of defining the same legal principle."  Id. at 532.

Likewise, here, the alternative definitions in G. L. c. 265, § 15A (d), do not establish different ways of committing the crime of assault and battery by means of a dangerous weapon causing serious bodily injury.  The elements of the crime are

_____

[2] The defendant relies principally on cases that have been abrogated by Zanetti.

"that the defendant intentionally touched the victim, however slightly; the touching was unjustified; the touching was done with an inherently dangerous weapon or an object used in a dangerous fashion; and the touching caused serious bodily injury." Commonwealth v. Vick, 454 Mass. 418, 432 (2009). What matters for purposes of this last element is that the defendant caused a serious enough bodily injury for the enhanced penalty provisions of the statute to apply. The alternative definitions are simply related ways of proving that element, much in the same way that the third element can be satisfied through proof that the object used was either inherently dangerous or used in a dangerous fashion. Indeed, the instructions in this case defined "dangerous weapon" in these alternative ways, but that does not mean, and the defendant does not contend, that we would have to determine whether the evidence was sufficient under both definitions.

We therefore conclude that a reviewing court need not examine the evidence separately as to each definition of serious bodily injury in G. L. c. 265, § 15A (d), to uphold a conviction against a sufficiency challenge. What is required is that there be sufficient evidence of serious bodily injury under at least one of the definitions. Turning to that question, and viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, see Commonwealth v.

Latimore, 378 Mass. 671, 677 (1979), we conclude that the jury could find proof beyond a reasonable doubt that the victim suffered bodily injury resulting in "a permanent disfigurement."[3] G. L. c. 265, § 15A (d).  See Commonwealth v. Heywood, 484 Mass. 43, 49-52 (2020) (affirming conviction under G. L. c. 265, § 13A [b] [i], upon concluding that evidence was sufficient to establish permanent disfigurement and impairment of bodily function).

The Supreme Judicial Court has recently defined "a permanent disfigurement" as "a significant and enduring injury that affects the appearance or the character of a person's bodily integrity."  Heywood, 484 Mass. at 50.  Evidence of scarring or a visible change in a person's outward appearance is one way to prove permanent disfigurement but is not necessarily required.  See id.  Furthermore, "the fact that an injury can be or was concealed or repaired does not preclude a finding of permanent disfigurement."  Id.

Here, the medical records showed that the victim suffered an approximately twenty-centimeter long gash to his face, necessitating an "[u]rgent" consultation with plastic surgery because of the severity of the wound and the time needed to repair it.  The jury could see the wound for themselves from the

---

[3] We do not decide whether the evidence was sufficient to establish serious bodily injury under the other two definitions.

graphic photographs that were in evidence.  The photographs taken before suturing show a gaping wound running from the victim's chin, past his ear, and toward the back of his neck. The photographs taken after suturing show that over thirty stitches were required to close the wound.  The jury could have assessed the severity of the injury from the photographs without medical expertise or explanation.  Cf. Scott, 464 Mass. at 364. In turn, the jury could have found, based on their ordinary, common experience, that a wound this long and deep -- requiring suturing by a plastic surgeon and follow up ten to fourteen days later -- was "significant and enduring" and would have caused scarring, resulting in a permanent disfigurement.  Heywood, 484 Mass. at 50.  See id. (jury could have found that injury "compromised the integrity of the victim's face" and caused permanent disfigurement, given evidence that victim sustained fractures requiring surgery and insertion of titanium plates). Cf. Commonwealth v. Johnson, 92 Mass. App. Ct. 538, 541-542 (2017) (grand jury could have found probable cause that victim suffered permanent disfigurement where he sustained lacerations to head, which totaled twenty-one centimeters in length, required suturing, and caused scarring).[4]

---

[4] We do not preclude the possibility that a cut could be so severe that reasonable jurors could find it to have "impair[ed] . . . a bodily function . . . or organ."  G. L. c. 265, § 15A (d).  But we do not decide that issue here.

<u>Judgment affirmed</u>.