NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1030

COMMONWEALTH

vs.

NORRIS N., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the juvenile was adjudicated delinquent for carrying a firearm without a license in violation of G. L. c. 269, § 10 (a), and for possession of a class B controlled substance in violation G. L. c. 94C, § 34.  As a result, the judge committed the juvenile on both counts to the Department of Youth Services until the age of eighteen.  On appeal, the juvenile challenges the sufficiency of the evidence on both adjudications, and claims errors in the judge's admission of certain opinion testimony, in his refusal to exclude certain testimony, and by permitting a police officer to identify him as a passenger in a car and the person depicted in surveillance video footage.  We affirm.

1. <u>Sufficiency of the evidence</u>. The juvenile claims that there was insufficient evidence that he carried a firearm without a licence to do so and that he possessed cocaine found in his jacket. We disagree.

When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether <u>it</u> believes that the evidence at the trial established guilt beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Hartnett</u>, 72 Mass. App. Ct. 467, 475 (2008), quoting <u>Commonwealth</u> v. <u>Velasquez</u>, 48 Mass. App. Ct. 147, 152 (1999). Nor are we obligated to "reread the record from [the juvenile]'s perspective." <u>Palmariello</u> v. <u>Superintendent of M.C.I. Norfolk</u>, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989). See <u>Commonwealth</u> v. <u>Duncan</u>, 71 Mass. App. Ct. 150, 152 (2008). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979).

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Latimore</u>, 378 Mass.

2

at 677-678.  To sustain the juvenile's delinquency adjudication for carrying a firearm, the Commonwealth was required to prove that the juvenile "(1) knowingly (2) had in [his] possession (3) a firearm (4) without a license."  Duncan, 71 Mass. App. Ct. at 153.  The juvenile challenges only the sufficiency of the evidence as to the element of possession.

In the light most favorable to the Commonwealth, the jury were entitled to find that at approximately 9 P.M. on the night in question, the police responded to a "shots fired" call involving a black Infiniti.  After receiving the dispatch, the police saw the Infiniti in which there were two people; the fourteen year old juvenile was in the passenger seat.  When the police activated their lights and siren to make a stop, the Infiniti "took off at a high rate of speed," and the police pursued it.

The Infiniti pulled into the driveway of a parking lot for a housing community on Annunciation Road, and the juvenile jumped from the car and ran toward an apartment building.  Officer Nicholas Cubarney ran after the juvenile.  As the juvenile fled, he was holding onto something near his waist on his right side while his left arm moved normally as would occur when running.  As Cubarney followed the juvenile into the building and up the stairway, he heard a door close on what he

3

believed to be the third floor. There was no one else in the stairwell as he chased the juvenile up to the sixth floor. Detective Juan Diaz and his partner arrived at the apartment building to assist and recovered the firearm from a windowsill on the third-floor landing; Diaz did not see any people, other than police, in the apartment building.

From these circumstances, the jury were entitled to infer that as the juvenile ran from the police, he was clutching a firearm in his waistband to keep it from falling, and that once inside the apartment building, while still evading the police, he deposited the gun on the third-floor windowsill before continuing to his apartment on the sixth floor. See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) (inferences drawn by fact finder "need only be reasonable and possible and need not be necessary or inescapable"). Given the short time frame of the pursuit, the lack of any other people seen in the building, and the gun being left in plain view, the jury could also properly infer that no one else could have left it there without it being detected or removed. See Commonwealth v. Jefferson, 461 Mass. 821, 826 (2012); Commonwealth v. Polanco, 92 Mass. App. Ct. 764, 772-773 (2018).

In conjunction with the above, from the juvenile's flight from the police and from his change of clothing after that

4

flight, the jury could also infer his consciousness of guilt, which further tips the scale toward there being sufficient evidence of possession.  See Commonwealth v. Doucette, 408 Mass. 454, 461 (1990).[1]

The juvenile also claims the evidence was insufficient to support his delinquency adjudication for possession of cocaine. In particular, he asserts that there was insufficient proof that he had knowledge of the cocaine found in the jacket because there was no evidence that the jacket belonged to him. Reviewing the evidence in the light most favorable to the Commonwealth, we are not persuaded.[2]

---

[1] Relying on Commonwealth v. Warren, 475 Mass. 530, 540 (2016), the juvenile claims that his flight from the police must be discounted as consciousness of guilt evidence.  While the Supreme Judicial Court has held, with respect to the analysis of reasonable suspicion for an investigatory stop, that a Black man's flight from the police is not necessarily probative of consciousness of guilt, the court has not completely eliminated such flight as a factor in the reasonable suspicion analysis. See Commonwealth v. Karen K., 491 Mass. 165, 180 (2023); Commonwealth v. Evelyn, 485 Mass. 691, 708-709 (2020); Warren, supra.  Here, however, where we are evaluating the sufficiency of the evidence, which requires us to view the evidence in the light most favorable to the Commonwealth, see Latimore, 378 Mass. at 677; where the car in which the juvenile was a passenger sped away from a police cruiser that had activated its lights and sirens; where defense counsel argued in summation that the juvenile "had every reason to run from the police" because he had cocaine in his jacket pocket; and where the jury were properly instructed on consciousness of guilt, an inference of consciousness of guilty was warranted.

[2] In a letter pursuant to Mass. R. A. P. 16 (l), as appearing in 481 Mass. 1628 (2019), provided to the panel one

To prove that the juvenile possessed a class B controlled substance in violation G. L. c. 94C, § 34, the Commonwealth was required to prove knowledge of the controlled substance[3] plus an ability and intention to control. Commonwealth v. Fernandez, 48 Mass. App. Ct. 530, 532 (2000). "[P]hysical possession necessarily entails the ability to control, and would ordinarily entail knowledge as well." Id. Here, Officer Kylie Langton, who was present when the juvenile was removed from his apartment, had the responsibility of searching the juvenile during the booking process. Langton testified that "[i]nside his jacket was a small plastic bag with a rocklike substance. Known to be crack cocaine." This testimony, which was not disputed, permitted the jury to conclude that the juvenile possessed the substance found in his jacket.

---

day before oral argument, the Commonwealth conceded that there was insufficient evidence to prove that the juvenile possessed the cocaine. The Commonwealth had argued in its brief that a portion of the footage from the body worn camera (BWC), exhibit 10, supported the adjudication of delinquency; the letter agreed with the juvenile that this portion of the video recording was not shown to the jury. Our independent review of the record, apart from the BWC, leads us to conclude there was sufficient evidence and, therefore, we do not accept the concession. See Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010) (notwithstanding confession of error, appellate court must conduct independent review).

[3] The juvenile does not challenge that the substance in question was cocaine.

On cross-examination, defense counsel asked, "Because it was March, a jacket was found for him to bring, because it was cold outside," and Langton answered, "Correct."  From this one-word response, and from the fact that the juvenile does not appear to be wearing the same jacket in the video footage of him running from Officer Cubarney, the juvenile claims that the police merely found a random jacket in the apartment and placed it on him.  However, that argument does not view the evidence in the light most favorable to the Commonwealth.  Even if this contradicted Langton's testimony that the jacket belonged to the juvenile, it would not change the sufficiency equation.  Under the Latimore standard, "we do not weigh the supporting evidence against conflicting evidence."  Commonwealth v. Semedo, 456 Mass. 1, 8 (2010).  "That contradictory evidence exists is not a sufficient basis for granting a motion for a required finding of not guilty."  Commonwealth v. Merry, 453 Mass. 653, 662 (2009).  The Commonwealth was not required to exclude "every reasonable hypothesis of innocence" (citation omitted).  Commonwealth v. Arias, 29 Mass. App. Ct. 613, 620 (1990).

Of course the jury were free to believe a random jacket in the juvenile's apartment, that just happened to contain cocaine, was given to the juvenile, the evidence of the juvenile's possession of the cocaine was also supported by his theory of

7

the case.  Although not a substitute for evidence, in defense counsel's closing argument she admitted that the juvenile possessed the cocaine.[4]  Defense counsel told the jury that the juvenile "had every reason to run from the police that night.  But not because of a gun.  Because he was a [fourteen]-year-old kid with cocaine in his pocket.  And he was scared."  Given that defense counsel herself suggested to the jury to draw the inference that the juvenile did in fact possess cocaine, and the evidence that it was "his" jacket, the permissibility of the jury's conclusion becomes even more plain.  Once the jury ascribed to the juvenile possession of the cocaine, the inference that he had knowledge and the ability and intention to exercise control over it was also reasonable and possible.[5]  See Commonwealth v. Deagle, 10 Mass. App. Ct. 563, 567 (1980) (inference of knowledge based on circumstantial evidence need

---

[4] Defense counsel moved for a required finding of not guilty, and renewed that motion after the defense rested, but offered no argument in court, or in the motions themselves, that the jacket in question was not his.

[5] The juvenile claims he could not exercise control over the cocaine in the jacket because he was handcuffed and in custody at the time.  However, he cites no authority for this argument, and we treat it as waived.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).  In any event, as the jacket was his, he exercised control over the cocaine in it prior to his arrest.  If a defendant's ability or intent to control contraband was to be measured from a point after an arrest, the Commonwealth could never meet its burden.

8

only be "reasonable and possible; it need not be necessary or inescapable"). Accordingly, there was sufficient evidence supporting the delinquency adjudication for possession of cocaine.

2. Opinion testimony. The juvenile also claims that Officer Cubarney's testimony, which described what was occurring in a surveillance video recording as it was shown to the jury, specifically, that the juvenile was holding onto something in his waistband or hooded sweatshirt, was tantamount to an improper opinion of the juvenile's delinquency. We disagree.

"Provided that a witness does not directly offer an opinion regarding the defendant's guilt or innocence in a criminal case, [] we have no rule in Massachusetts prohibiting an opinion that touches on an ultimate issue" (citation omitted). Commonwealth v. Canty, 466 Mass. 535, 543 (2013). See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 325-326 (2023). See also Mass. G. Evid. § 704 (2025) ("An opinion is not objectionable just because it embraces an ultimate issue").

As stated above, Officer Cubarney testified that the juvenile was "running with one left arm freely moving, as one would jog, while simultaneously the right arm is holding onto something in [his] waistband area or in [his] hooded sweatshirt area." He neither stated that the juvenile was unlawfully

9

carrying a firearm, nor that he was guilty of that crime. In other words, Cubarney did not offer an opinion on the ultimate issue. See Commonwealth v. MacDonald, 459 Mass. 148, 163-164 (2011). There was no error.

The juvenile further claims that Cubarney's testimony was also an improper lay opinion about what was portrayed in the surveillance video recording because it invaded the province of the jury. We disagree.

"A lay opinion . . . is admissible only where it is '(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.'" Canty, 466 Mass. at 541, quoting Mass. G. Evid. § 701 (2013). A judge's decision to admit a lay opinion is reviewed for an abuse of discretion. Commonwealth v. Brum, 492 Mass. 581, 593-594 (2023).

Here, the surveillance video recordings show the juvenile running and holding with one hand something near his waist on his right side. Cubarney's nontechnical and nonscientific testimony was intended to draw the jury's attention to this important aspect of the surveillance footage, and it was properly admitted to assist "the jury in evaluating the

10

evidence." Commonwealth v. Barbosa, 477 Mass. 658, 673 (2017). See Commonwealth v. Grier, 490 Mass. 455, 476 (2022). There was no abuse of discretion.[6]

3. "Shots fired" testimony. The juvenile further claims that, over objection, the judge improperly permitted Officer Cubarney to testify that he and his partner were responding to a dispatch of "shots fired" prior to their pursuit of the black Infiniti. We disagree.

To avoid putting an officer in a "false position of seeming just to have happened upon the scene[,] he should be allowed some explanation of his presence and conduct." Commonwealth v. Doyle, 83 Mass. App. Ct. 384, 389-390 (2013), quoting Commonwealth v. Rosario, 430 Mass. 505, 508 (1999). The prosecution may introduce "carefully circumscribed extrajudicial statements in criminal trials to explain the state of police knowledge." Rosario, supra. See Commonwealth v. Bradshaw, 385 Mass. 244, 269-270 (1982) (prosecutor "entitled to present as full a picture as possible of events surrounding the incident").

---

[6] Contrary to the juvenile's claim, the prosecutor properly argued in closing -- without reference to Cubarney's testimony -- that the jury could infer from the surveillance footage and photographs that the juvenile ran "with his hand pinned" to his waistband because he was carrying a firearm. See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987) (prosecutors may argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence").

Because this type of testimony carries with it the risk of misuse, in an exercise of discretion, a judge must weigh the probative value of the evidence against any unfair prejudicial effect it might have on the jury. See Commonwealth v. West, 487 Mass. 794, 805 (2021); Mass. G. Evid. § 403 (2025). Under this standard we do not disturb a judge's decision "absent a clear error of judgment in weighing the relevant factors" (quotation and citation omitted). Commonwealth v. Yat Fung Ng, 491 Mass. 247, 264 (2023).

Here, the judge properly allowed Cubarney to testify that he was responding to a dispatch of "shots fired" to put in context for the jury the manner in which the police responded. It was relevant and necessary to explain why Cubarney, and the other responding officers had their service weapons drawn when they arrived at the apartment building, and when they entered the juvenile's apartment. Also, the testimony contained no details, was limited to Cubarney's knowledge, and it did not implicate the juvenile, who was not charged with discharging a weapon. See Rosario, 430 Mass. at 509-510. Contrast Commonwealth v. Tanner, 66 Mass. App. Ct. 432, 440 (2006) (statement functional equivalent of informing jury that witness identified defendant as cocaine supplier). There was no abuse of discretion. See Commonwealth v. Rupp, 57 Mass. App. Ct. 377,

383-384 (2003) (proper to admit testimony that police responded to 911 call "[r]egarding a firearm" to explain police show of force).

4. <u>Identification of the juvenile</u>. Finally, the juvenile claims that the judge improperly permitted Officer Cubarney, over objection, to identify the juvenile as the passenger in the black Infiniti and as the person depicted on the surveillance video footage. We disagree.

The decision to admit witness identification testimony is committed to the sound discretion of the trial judge. See <u>Commonwealth</u> v. <u>Pleas</u>, 49 Mass. App. Ct. 321, 328 (2000). Identification testimony of a police officer carries "the potential for inappropriate prejudice to the defendant" because it may suggest that the officer knew the defendant from prior arrests or convictions. <u>Id</u>. at 327. Here, Officer Cubarney's identification of the juvenile as the passenger was not unduly prejudicial. He testified, without further explanation, that he "recognize[d]" the juvenile. The jury were not made aware of how Cubarney knew the juvenile, which was only disclosed at voir dire, discussed below. In any event, as the arresting officer who was also an eyewitness to the crime, Cubarney could permissibly identify the juvenile in court. See <u>Commonwealth</u> v. <u>Crayton</u>, 470 Mass. 228, 242 (2014).

13

Relative to the surveillance video footage, "[a] lay witness is permitted to identify an individual depicted in a video recording or photograph if that testimony would assist the [fact finder] in making their own independent identification." Commonwealth v. Pina, 481 Mass. 413, 429 (2019). "The general rule is that a witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." Id. at 429-430, quoting Commonwealth v. Vacher, 469 Mass. 425, 441 (2014).

In determining whether a witness's identification of a person appearing in a photograph or video recording is admissible, we consider several factors, including (1) the quality of the images, (2) the level of familiarity of the witness with the person depicted in the video recording, and (3) whether the suspect was disguised in the video recording or has altered his appearance since the time of the crime. See Pleas, 49 Mass. App. Ct. at 325-326.

Here, after a lengthy voir dire, the judge credited Cubarney's testimony concerning his knowledge of the juvenile. Cubarney was familiar with the juvenile prior to the incident because he had viewed the juvenile's social media postings.

14

Cubarney had viewed more than seventy-five photographs and video recordings of the juvenile on Snapchat, a mobile application. Cubarney had also previously identified the juvenile in a Boston Regional Intelligence Center "be on the lookout" alert that was distributed to identify a suspect in a March 12, 2021 "shots fired" incident.  This was ample evidence for the judge to conclude, as he did, that Cubarney had "a solid foundation" to testify that he recognized the juvenile.  Contrast Commonwealth v. Fisher, 492 Mass. 823, 851 (2023) (officer interacted with defendant once and saw him in one video recording that officer watched multiple times); Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 802-803 (2024) (officers' encounters with defendant were infrequent, sporadic, and unmemorable).

In addition, the quality of the surveillance video footage was poor, and the juvenile's appearance was altered since the time of the crime.  By the time of trial, the juvenile had aged three years and changed his hairstyle.  The judge could reasonably conclude that Cubarney was "in a better position than the jury to identify the [juvenile]," Pina, 481 Mass. at 430,

and that his testimony would be helpful to the jury.  There was neither error, nor an abuse of discretion.[7]

<u>Adjudications of delinquency affirmed</u>.

By the Court (Meade, Massing & Brennan, JJ.[8]),

*Paul Little*

Clerk

Entered:   February 26, 2026.

---

[7] Having determined there was no error in this case, we need not address the juvenile's cumulative error argument.

[8] The panelists are listed in order of seniority.